# Hall, et al. v. Orme, et al.

(Decided January 30, 1912.)

## Appeal from Robertson Circuit Court.

1. Undue Influence—Presumption.—It will be presumed that a deed was obtained by undue influence where the grantor was in feeble health, the grantee had acquired a dominating influence over him, the deed was inconsistent with the oft expressed intentions of the grantor previously made, and gave the grantee, who was one of his children, a great advantage over some of the others, it appearing that the father, who was the grantor, loved all his children and wished to treat them all with equality.

2. Verdict of Jury—Advisory.—In an action in equity to set aside a deed the verdict of the jury to whom the case is submitted is only advisory to the chancellor, and he may disregard it, and give judgment as to him seems right on the whole case.

J. J. OSBORNE for appellant.

HOLMES & ROSS, SAMUEL THROCKMORTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

John S. Orme died intestate in Robertson County in December, 1902. He left surviving him his widow, and eight children. Five of the children were daughters and three were sons. In December, 1901, or just about a year before his death, Orme was found unconscious on a turn-pike near his house. He remained unconscious for some hours, and was never well again; that is, he was never able to do much work; he dragged one leg and foot as he walked, and was unable to use his arm so as to put on his coat without help. He spent most of his time in bed or on the bed. On February 11, 1902, or about two months after he was taken sick, he and his wife made a deed to their three sons, Thomas Orme, Nimrod Orme and Howard Orme to four tracts of land; one of 9 acres, the second of 2 acres, the third of 44 acres and the fourth of 100 acres. Three of the daughters brought this suit against the three sons to set aside this deed on the ground that it was obtained by undue influence from their father when he was mentally incompetent to make a deed. Two of the daughters declined to join the plaintiffs in the action and were made defendants. On a final hearing of the case the plaintiffs' petition was dismissed. They appeal.

The tract of 9 acres and the tract of 2 acres were the property of Amanda Orme. Her husband, John S. Orme, had no title to this land, and as to these two tracts it is conceded that the deed should not be set aside. The facts as to the other two tracts are in substance these: John S. Orme owned originally the 44 acre tract. About twenty years before his death, he bought the tract of 100 acres, and gave a mortgage on it and on the 44 acre tract to secure the purchase money. He failed to pay the purchase money, and suit was brought to enforce its payment; and in that suit both tracts were sold. Orme induced a neighbor, Lewis Thompson, to buy in the land for him at the commissioner's sale. Thompson said that he knew Orme would not pay for the land, but that he knew the boys (Thomas and Nimrod) would pay for it. The family continued to live on the two tracts of land and all worked in the crops. Their father stimulated them by saying that all should work together and share to-gether. In the course of time the 44 acre tract was paid for to Thompson, and he then made a deed to Amanda Orme for it. A few years after this he died. At his death there was a balance of about $300 owing on the 100 acre tract. John S. Orme brought a suit to have the

100 acre tract conveyed to him by Thompson's heirs, tendering to them the amount due upon it. In this suit his two sons, Thomas and Nimrod, were witnesses for him. The prayer of the petition was granted and the land was conveyed to him by the commissioner under an order of the court.

The plaintiffs charged in their reply that the deed was made to Amanda Orme for the 44 acres because John S. Orme was in debt and he designed to place the land in her name so as to prevent his creditors from subjecting it. This being true, he could not have relief against the deed. A court of equity will leave the debtor where it finds him when he has conveyed away his property for the fraudulent purpose of defeating the claims of his creditors. The plaintiffs claim under John S. Orme. They stand in his shoes and they can no more have relief against the deed for 44 acres than he could. This 44 acres must, therefore, be regarded as the property of Amanda Orme, and stand just like the two tracts of nine acres and two acres. She is still living and appellants can not complain of her conveyance of her property.

It remains, therefore, only to consider the validity of the deed as to the 100 acre tract, the title to which was in John S. Orme. The proof for the plaintiffs is to the effect that John S. Orme was a man of good sense and the evidence for them does not show that his mind was not sound at the time the deed was made. There is evidence that he would have spells during the last year of his life and that during these spells his mind was much affected; but the evidence on both sides shows that aside from the time when he was affected by one of these spells, his mind was good. The evidence for the plaintiffs is to the effect that Thomas Orme had acquired a commanding influence over the mind of his father, and that his father would do anything he said. In February, 1902, Thomas Orme went to the county seat and employed a lawyer to write the deed telling him how to write it. The lawyer wrote the deed as directed by Thomas Orme, and after the deed was prepared Thomas Orme had the clerk to go out to his father's in a sleigh, the ground being covered with snow. The deputy sheriff went with the clerk. When they got there John S. Orme was either in bed or on the bed. Mrs. Orme and two of the sisters were in the room. Thomas Orme asked them to leave the room. After they left the room the deed was signed by John S. Orme and acknowledged and after

he had signed it Mrs. Orme was called in and she signed it. Both the sheriff and the clerk testify that John S. Orme's mind was good and that he said that he was deeding the land to the boys, but that the girls had been provided for and would be provided for. The attorney who wrote the deed testified that a year or more before this, when he was at Mr. Orme's house, Orme told him that the boys had paid the purchase money or are paying it, and asked how the deed should be made to them, saying he wanted to convey the land to them.

The proof also shows that Thomas Orme and Nimrod Orme built a turnpike in Mason County receiving from the county about $1,200; and that this money went with the earnings of the farm to pay the purchase money to Thompson. One of the sisters went up to Mason County and cooked for them and the hands while they were building the turnpike. The other girls did the work at home until they were married and also worked in the field doing such work as a woman could do. There is also proof that Thomas Orme some years before this tried to get his father to convey to him a part of the land on which he was living, and his father refused to do it. The deed in question recites that it is made in consideration that the parties of the second part have paid nearly the whole of the purchase money for the land. Thomas Orme and Nimrod Orme are the parties of the second part, and one of the stipulations of the deed is that they are to convey to Howard Orme on his becoming twenty-one years of age a one-third interest in the land. The deed also provides that the grantors retain a life estate in 25 acres of the 100 acre tract, including the dwelling house. Howard Orme when this deed was made was but a boy and no reason is shown why he should receive one-third of the land when his sisters got nothing. They had under the evidence done as much work as he had at least. They had been provided for in no way and John S. Orme after this deed was made had nothing except the life estate which he and his wife reserved in the 25 acres of land. All the personal property on the place was claimed by Thomas Orme and Nimrod Orme. The girls received nothing.

While we are satisfied from the evidence that Thomas Orme and Nimrod Orme were good sons, and did a good part by their father and mother, we do not see that they were entitled to everything the father had. Nothing is clearer from the evidence than that all the family worked

together to save the home, as the father expressed it, they should all work together and share together. While John S. Orme was a man of good mind he was not a successful man, and he had for years leaned upon his son, Thomas Orme, who had practically control of things. He dominated his father before he was taken sick and of course his power over his father was greater when his father was weakened by sickness. He had the deed drawn; it was drawn as he directed. His father signed and acknowledged it as it was drawn. When the deed was brought out to his father, his sisters were requested to leave the room that they might not know what was going on. While there is much in the evidence to show that Thomas Orme and Nimrod Orme paid a large part of the purchase money to Thompson, there is nothing in the evidence to show that Howard paid any of it; or that there was any reason for giving Howard one-third of the land; except that somebody was protecting Howard. There was nobody to protect the daughters. In view of the influence which Thomas Orme had over his father, the part he took in having this deed drawn, the fact that the father evidently had in mind that the daughters were in some way to be provided for, and that this deed took away all possibility of their being provided for, we have reached the conclusion that the deed should not stand, but should be set aside so far as it affects appellants. So far as it affects the other two daughters who did not join in this suit, it will stand.

We are satisfied from the evidence John S. Orme loved all his children and wished to deal justly with each of them. He wished the three sons to have the land, but he did not contemplate doing injustice to his daughters, and he intended that a provision should be made for them, probably by a charge on the land of a certain sum of money for their benefit, and so it was the deed was not made while he was well. When he was taken sick with a trouble that must soon end his days, Thomas Orme had the deed drawn and no provision was made for the daughters. It often happens that a sick man's mind is apparently sound, when by reason of his weakness, the will has lost its power to assert itself. The deed here gotten up by one of the beneficiaries is so out of keeping with the expressed intentions of John S. Orme, that in view of the situation of the parties and the unequality of the deed, undue influence should be presumed. (Smith v. Snowden, 96 Ky., 32; Hoeb v.

Maschinot, 140 Ky., 330; Darlington's Estate, 30 Am. St. R., 776.)

It is insisted, however, that the case is not so presented that we can consider it on the merits. After the pleadings had been made up, the plaintiff asked a jury trial. At the conclusion of the evidence for plaintiffs the court instructed the jury peremptorily to find for the defendants. The jury returned a verdict as directed by the court. The plaintiffs filed grounds for a new trial; the motion was overruled. The plaintiffs then offered to file a reply to which the defendants objected. The reply was filed to which the defendants excepted. The defendants were then given thirty days to file their rejoinder. They filed the rejoinder; both sides then took their proof by depositions and the case being submitted on the merits, the court dismissed the plaintiffs' petition.

If this was an ordinary action there would be much force in the contention that the merits of the case were not before us. But this is an equity action to set aside a deed. The verdict of the jury is only advisory to the chancellor. He can disregard it when he comes to render his final judgment if he sees proper. The verdict of the jury not being conclusive in the action, it was within the power of the chancellor to disregard it and to hear the case on its merits as finally prepared by the parties. (McElwain v. Russell, 11 R., 649; Hill v. Philips, 87 Ky., 169; Ford v. Ellis, 21 R., 1837.) This he did and he having heard the case on its merits, on an appeal from his judgment, the case is here on its merits.

Judgment reversed and cause remanded for a judgment as above indicated.