## Hitchcock, et al. v. Tackett, et al.

(Decided February 13, 1925.)

### Appeal from Johnson Circuit Court.

1. Deeds—Evidence Held to Show that Price Paid by Grantee was Inadequate.—In action by heirs of grantor to cancel deed because of grantor's mental incapacity, evidence held to show that price

paid by grantee was inadequate and much less than the fair and reasonable value of property.

2. Evidence—Common Knowledge that in 1919 Values of Property were Higher than Theretofore.—It is a matter of common knowledge that in 1919 property of every kind was bringing higher prices than it had brought theretofore.

3. Deeds—Evidence Held to Show Grantor's Mental Incapacity.— Evidence held to require finding of grantor's mental incapacity.

4. Deeds—"Confidential Relationship" Exists where one Party to Transaction Exercised Dominion Over Other.—Where conveyance was, made under such conditions that one of the parties may be said to have reposed confidence in the other and such other exercised dominion, superiority, and influence, the relationship will be regarded as confidential.

5. Deeds—Confidential Relationship Existing Between Stepson and Mentally Incompetent Stepfather Held to Require Setting Aside of Deed.—Grantee who was grantor's stepson and for many years lived on adjoining farm and was grantor's friend and advisor, and who, at time when the grantor was mentally incompetent, enlisted the aid of grantor's son to procure deed for inadequate consideration held to have occupied such confidential relation with grantor as to require the setting aside of the deed.

6. Deeds—Grantee Occupying Confidential Relationship to Grantor has Burden to show Transaction was in Good Faith and Equitable and Just.—Where a confidential relationship exists between grantor and grantee, the burden is on the one receiving the benefit of the conveyance to show that the transaction was in good faith and was equitable and just.

7. Estoppel—Must be Pleaded and is Not Admissible Under Traverse, nor can Plea by Interveners Inure to Benefit of Defendant Not Pleading Estoppel.—In an action to set aside deed to defendant for mental incapacity, in which defendant interposed no plea of estoppel, held that a plea of estoppel by interveners claiming rights in oil and gas could not inure to benefit of defendant, nor support a judgment for him, since estoppel must be pleaded, and evidence thereof is not competent under a mere traverse complaint.

8. Judgment—Judgment on Issues Raised by Traverse of Intervening Petition Without Bearing on Merits Held Error.—In action by heirs of grantor for cancellation of deed because of grantor's mental incapacity in which interveners claimed adverse interests in oil and gas, it was error to adjudge the interveners to be owners of interests claimed and to quiet title where there had been no hearing upon the issues made by plaintiffs' traverse of intervening petition.

HOWES & HOWES for appellants.

F. P. BLAIR for Tackett.

WHEELER & WHEELER for John B. Wells and J. N. Kennard.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Prior to the 31st day of May, 1919, William J. Frazier was the owner of a tract of land in Johnson county, variously estimated to contain from 100 to 200 acres, but probably about 175 acres.

He was then about 85 years of age, his wife had been dead for about ten years, and one of his sons and the son's family were living with him, and had been for some years, on his own place. On an adjoining farm lived the appellee, A. J. Tackett, who had some forty years earlier married William J. Frazier's step-daughter, and Tackett had been living on the adjoining farm most of the time for thirty years.

The older Frazier and Tackett not only sustained the relationship of step father-in-law and step-son-in-law, but they were so far as the record discloses during all these years on excellent terms, and in fact quite intimate. It is reasonably clear from the evidence that the old man relied greatly upon the judgment of Tackett and trusted him in every way; likewise Tackett was intimate with the old man's son Ed. who lived with him.

On the 31st day of May, 1919, William J. Frazier conveyed his said tract of land to Tackett in consideration of $1,800.00 cash, and about two years thereafter died.

This is an equitable action by his heirs at law seeking a cancellation of that deed so made by him upon the ground of unsoundness of mind and incompetency upon his part to make the same. It is alleged that at the time he was laboring under the disability of insanity and incompetency to such extent as that said deed was not his act or deed, and that defendant Tackett at the time, and for some time prior thereto, knew of William J. Frazier's unsoundness of mind and incompetency, but for the wrongful and fraudulent purpose of perpetrating a fraud upon him and these plaintiffs, and for the purpose of cheating him and them out of their said property, wrongfully and fraudulently procured the execution of said deed; that defendant was a man of long experience in trading in and buying and selling real estate, and was a man of shrewdness and sagacity in business, and willfully and fraudulently took advantage of their ancestor's incompetency and imposed upon and overreached him in the making of said trade and in the procurement of said

deed, and did so with the deliberate purpose and design of cheating their ancestor and the plaintiffs out of said land. They allege that the reasonable and fair market value of the land at the time was between $3,000.00 and $3,500.00, and that defendant knew at the time the land was worth not less than the sum of $3,000.00, and that the $1,800.00 paid by him was a grossly inadequate price.

A. J. Tackett was the only defendant named in the original petition, and his answer to it was only a traverse.

On the issues as thus made between the plaintiffs and Tackett a large volume of evidence was taken, consisting of the depositions of fifty or more witnesses. This evidence was chiefly upon what occurred between William J. Frazier, his son Ed. and the defendant Tackett at and previous to the making of the deed, as to the state of mind of William J. Frazier and his conduct at, before and after this transaction, and upon the value of the property. The evidence largely bore upon the insanity and incompetency of William J. Frazier, and on both sides was wholly given by nonexpert witnesses.

The land was chiefly rough and mountainous, although a considerable part of it had been cleared and was in cultivation. Most of the timber had been removed from it, although there still remained at places some valuable timber. There was a coal vein on it, and it lay in a general section of the county where there had been some oil and gas development, but at the time there was no producing oil or gas wells very near to it.

The estimates of value, as is customary in such cases, varies greatly. Most of the plaintiff's witnesses place it from $3,000.00 to $4,000.00, while nearly all the defendant's witnesses place the value at $1,800.00, and some of them as low as $1,500.00. One of the best equipped witnesses who testified on the question of value was a former deputy assessor for that section of the county during the year 1918, and who actually assessed this farm that year. He was not related to the parties, and did not live in the immediate vicinity, and his estimate was that in May, 1919, the property was worth $4,000.00. A careful analysis of all the evidence on value, however, induces the belief that at the time of the conveyance, considering the evidence of all the witnesses, the quantity of cleared ground, and its productiveness, together with the improvements which were not particularly valuable, and likewise taking into the estimate its

potential value for oil and gas production purposes, the fair and reasonable market value of the property was about $3,000.00. It is true the evidence discloses that some time before that William J. Frazier had priced the property at even less than $1,800.00, yet we know as a matter of common knowledge that in 1919 all property of every kind was bringing higher prices than it had brought theretofore; not only so, there is convincing evidence in the record that at no time for several years prior to 1919 was William J. Frazier competent to place a value upon his property, or to deal with reference thereto.

The evidence on the question of competency or incompetency consists very largely in the unsupported expressions of opinion by nonexpert witnesses on each side upon that issue. The facts, however, upon which some of the plaintiff's witnesses based their opinions necessarily entitles such expressions to more weight. The outstanding admitted facts appear to be that William J. Frazier was at the time this deed was made about 85 years of age; that he had a sister who had become insane; that he had a son who had been committed to the asylum at the age of about 30 years; that he himself, even in his prime, had never been a strong-minded man; that about ten years before this deed was made he had lost his wife, and shortly thereafter his son had been committed to the asylum, he at the time being about 75 years of age; that from that time on he failed rapidly and was usually and generally regarded by persons in the community as being not only very eccentric and peculiar, but as being unfitted for the conduct of business; that during the ten or twelve preceding years his son who lived with him had transacted all or most of his business, and there is evidence that some of his neighbors and friends had declined to do business or trade with him because of his mentally enfeebled condition.

It was under these circumstances that the deed was made, and the additional facts are that his son Ed, who lived with him and transacted his business, was a party to and countenanced and participated in the trade between the old man and Tackett, and apparently did so with the hope and understanding between him and Tackett that they would shortly thereafter have the old man to make a will in which he, Ed, should be the chief beneficiary. And as a matter of fact some two or three days after the execution of the deed William J. Frazier

did attempt to execute a will disposing of the $1,800.00, and actually gave to his son Ed $1,000.00 of that money, retained $200.00 for his own purposes, and turned over the other $600.00 to Ed and Tackett to be divided equally between his other children and the descendants of such of them as were dead.

So that we have a son and a step son-in-law advising and counseling with an old man, feeble in mind and body, in the sale of his farm and in the distribution of the proceeds of that sale. We find the stepson-in-law becoming the purchaser of the land at less than its value, and we find the son—one of seven children—getting more than half the proceeds of that sale. We find an enfeebled old man eighty-five years of age, evidently with a streak of insanity in his blood, and torn and distracted by grief over the loss of his wife and a great misfortune to his son, on one side, and we find on the other two much younger men active, alert, sagacious, and each for purposes of his own, inducing him to sell his home and distribute the proceeds.

It would be farcical to say in the light of the relationship between these parties that the transaction was a fair or equitable one, and it would be a reflection upon the administration of equitable principles to say that such a transaction could be upheld in equity and good conscience. It requires no argument to show nor citation of authority to uphold the proposition.

Ordinarily equity will only invoke the doctrine of confidential relationship where the parties sustain the relation either of trustee and *cestui que trust,* guardian and ward, attorney and client, parent and child, husband and wife, principal and agent, master and servant, and physician and patient, yet it will be imposed where none of those relationships exist if the facts justify the assumption that the transaction was had under such conditions that one of the parties may be said to have exercised dominion over the other. In this case the relationship manifestly existed between William J. Frazier and Tackett for two reasons; first, because Tackett had married his step-daughter and had lived on an adjoining farm for a long number of years and sustained to him not only the relationship of step son-in-law but of neighbor, friend and advisor. Second, it is reasonably clear from the evidence that Tackett enlisted in his campaign to procure the old man's farm the active support of his son Ed, with whom the old man

lived, and who in fact sustained toward the old man one of the relationships of confidence which under any and all circumstances justify the application of that doctrine. In other words, Tackett not only sustained that relationship himself, but procured the assistance of another who sustained it to even a more marked degree. Such relationship exists where there is confidence reposed on the one side, and superiority and influence exercised on the other.

Not only so, when the relationship is shown to exist there is imposed upon the one receiving the benefit the burden of showing either the absence of the exercise of such influence, or that the transaction was had in perfect good faith on his part, and was equitable and just, This burden is imposed because of the relationship between the parties, and equity demands of the party receiving the benefit that he shall show by clear and convincing evidence that he took no advantage of his situation. 12 C. J. p. 420 and authorities; 10 R. C. L. pp. 897-8 and authorities; McHarry v. Irvine's Exor., 85 Ky. 322; Hensan v. Cooksey (237 Ill. 620), 127 A. S. R. 345 and note; Wilkerson v. Duerson, 177 Ky. 696; Dick v. Albers (243 Ill. 231), 134 A. S. R. 369 and note; Yarbrough v. Harris (Ala.), 1912A Ann. Cases and note; 21 R. C. L., p. 829; 15 A. S. R. 997; Hays v. Meyers, 139 Ky. 440; Culton v. Asher, 149 Ky. 659; McDonald v. Baker, Feb. 13th, 1925.

Not only has appellee failed to sustain the burden thus imposed upon him, but the preponderance of the evidence as a whole, apart from the rule as to the burden, justifies the setting aside of the conveyance in so far as Tackett is concerned.

After the case was ready for submission on the issues between the plaintiffs and Tackett, and after, so far as we can gather from the voluminous record, all the depositions on those issues had been taken, and on the 10th day of November, 1923, B. I. Wheeler, J. N. Kennard, John B. Wells, Charles W. Wheeler and S. J. McCain filed their petition to be made parties to the action, alleging that they were interested in and held title to certain interests in the oil and gas in, on and under the land in controversy. As to Wheeler it is alleged that he acquired his interests therein on June 29, 1923, during the pendency of this action, but as to the other petitioners there is nothing to show when their interests were acquired.

The plaintiffs entered a motion to dismiss the intervening petition, and filed a demurrer to so much thereof as relied upon the defense of innocent purchase, and both the motion and the demurrer were overruled.

The allegations of the intervening petition were traversed on the record, and the case submitted for judgment without any evidence on the issues raised by the intervening petition. The court dismissed the plaintiff's petition, and adjudged the intervenors to be the owners of certain interests in the tract of land, and quieted their title.

The judgment as entered does not disclose the ground upon which the chancellor based it, but it is suggested in the briefs that it was entered solely upon the ground of the plea of estoppel asserted by the intervenors against the plaintiffs, and if this is true it must have been upon the idea that such plea by the intervenors inured to the benefit of the original defendant Tackett, for Tackett himself had interposed no such plea. Manifestly that was error, for it is a well recognized rule of pleading in this state that an estoppel of the kind here involved must be pleaded by the party relying upon it, and that evidence bearing thereon is not competent under a pleading which merely traverses those of a complaint. Powell v. Wines, 179 Ky. 414; Louisville Tobacco Warehouse Company v. Lee, 172 Ky. 171; Bracket v. Modern Brotherhood, etc., 154 Ky. 340.

The court likewise erred in adjudging the intervenors to own the several interests asserted by them, and in quieting their several titles thereto; for the averments of the intervening petition were traversed upon the record, and at the time of the entry of the judgment there had been no hearing upon the merits whatever of the claims asserted in, or the issues made by the traverse of its allegations.

If on the contrary the court had properly dismissed the petition of the plaintiffs upon the issues made between them and Tackett only, he would have been authorized possibly to enter the judgment he did as to the intervenors; but we have seen that the judgment on the original issue between Tackett and the plaintiffs was erroneous, and that leaves undetermined all issues between the plaintiffs and the intervenors.

We do not see the importance at this time of passing upon the propriety of the court's action in declining to dismiss the intervening petition, or in overruling plain-

tiff's demurrer to the plea of innocent purchase, and there having been no trial or hearing upon the merits of the controversy between the plaintiffs and the intervenors, we can see no alternative except to reverse the whole judgment and direct that the deed made by William J. Frazier to Tackett be set aside and held for naught, but not so as to affect the interests of any of the intervenors or other vendees of Tackett, not parties to the action. Under the situation, therefore, all questions between such parties are left open, and the judgment setting aside the deed to Tackett will in no wise effect any of his vendees, and any action of the chancellor on that branch of the case is expressly left open for future action.

Upon the return of the case on the issues between the intervenors and the plaintiffs, either of such parties may plead further, and nothing in this opinion is to be construed as settling any questions whatever between the intervenors and the plaintiffs.

The judgment is reversed for the entry of a judgment as herein indicated in the original action.