## S. W. Ross v. A. D. Ross.

(Decided November 16, 1926.)

### Appeal from Madison Circuit Court.

1. Deeds—Confidential Relations Between Infirm Grandfather and Grandson Held to Require Setting Aside of Deed to Grandson.— Evidence that grandson had charge of infirm grandfather's business and had great influence over him held to require setting aside of deed to grandson, taken in violation of his duty as the grandfather's agent, for land paid for by grandfather or from proceeds of joint operation of farm which grandfather owned for life.

2. Partnership.—Where grandfather and grandson did business as partnership, deeds for land to grandson by grandfather, held

taken as trustee for partnership and to be considered partnership assets.

BURNAM & GREENLEAF and G. M. SMITH for appellant.

JOHN NOLAND and J. P. CHENAULT for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Some years ago when S. W. Ross was between seventy and eighty years of age some of his children instituted a proceeding against him in the county court to have him declared of unsound mind. He resisted the proceeding and it was defeated. But he felt unkindly toward those who had instituted the proceeding or were behind it. He owned two hundred acres of land for life in Madison county. His son-in-law, G. W. Ross, for a while after this looked after his business, as he was not able to get around and looked after it. Later he took the business out of the hands of G. W. Ross and put it in the hands of his grandson, A. D. Ross, a son of G. W. Ross, who had charge of it for some years. While things were running along in this way in February, 1919, the following writing was executed:

"February 3, 1919. This agreement between S. W. Ross and A. D. Ross is as follows: A. D. Ross agrees to buy the D. L. Prewitt house and lot one-half mile from Round Hill and let Mr. S. W. Ross live on and possess same during his life. S. W. Ross agrees to let A. D. Ross have the use of all his farm land during his life.

"S. W. Ross.
"A. D. Ross.

"Witnessed by: Joe Kelley."

In February, 1919, and soon after the date of this writing the Prewitt property was purchased at the commissioner's sale for $7,000.00 and A. D. Ross had the deed made to his grandfather for life with the remainder at his death to him in fee. On April 20, 1919, they purchased of R. M. Ross a tract of 67 acres of land at $100.00 an acre, and A. D. Ross had the deed to this land made one-half to him and one-half to his grandfather for life, with the remainder to him in fee. On October 18, 1923, S. W. Ross filed the first of these actions in which

he alleged that he was about eighty-five years of age and had been for a number of years in feeble health physically and his mind had been to some extent impaired; that the Prewitt property was purchased for him and he paid the entire consideration and that A. D. Ross had procured the deed made to him in direct violation of his agreement with the plaintiff in fraud of his rights and without his knowledge; that owing to his feeble, physical and mental condition he relied upon his grandson, A. D. Ross, to transact the business, above mentioned, for him, and that he had thus obtained the deed to himself. He also alleged substantially the same facts as to the 67 acres of land purchased from R. M. Ross, except that he alleged that he only purchased one-half of this land and A. D. Ross purchased the other half. He prayed that both of these deeds be cancelled and that A. D. Ross be adjudged to hold the property in trust for him.

In a third paragraph he alleged that A. D. Ross at his request shipped for him a carload of hogs to the Cincinnati market in August, 1923; that A. D. Ross shipped the hogs in his own name and sold them and refused to account to him for any part of the price of the carload of hogs, and he prayed that the defendant be required to disclose what he got for the hogs and to account for the amount.

On August 25, 1924, he filed another action against A. D. Ross in which he set up, in substance, that A. D. Ross was in possession of the two hundred acre tract which he owned for life and was claiming it under the paper dated February 3, 1919, above quoted. He also alleged that no consideration at all was paid or given for that contract; that at the time it was executed he was unable to read writing; did not read the writing; did not know its contents, and his signature thereto was procured by fraud or when he did not understand what he was doing. He prayed that the paper be adjudged void. In that petition he also alleged that about the year 1916 he had turned over the two hundred acres to A. D. Ross to manage and operate for him as agent, he being in such condition that he was unable to operate it himself; that A. D. Ross, being his grandson, agreed to assist and help him in managing and operating the farm, and was to receive for his services a reasonable compensation. He prayed that the defendant be required to answer and disclose under oath what he had received in the manage-

ment of the farm from crops and live stock sold, etc., and to file a statement of what he had done with the money.

A. D. Ross filed an answer controverting the allegations of the petition in each case. Proof was taken; the two cases were heard together and on final hearing the circuit court dismissed the plaintiff's petition in both cases. The plaintiff appeals.

When the paper of February 13, 1919, was executed S. W. Ross was eighty-two years old. For about three years A. D. Ross had had charge of his business, because he was too infirm in body and mind to attend to it. One was an infirm old man, the other was his grandson, a vigorous young man, who had great influence over his grandfather and, as he himself declared, could take him anywhere with a quart of whiskey. The grandfather says that he paid for the Prewitt land. He signed the sale bond, and the proof tends strongly to show that what the grandfather did not pay with his own means was paid from the proceeds of the operation of the 200 acre farm, which the grandfather owned for life. Under such circumstances the contract cannot be sustained. The rule is thus stated in 13 C. J., p. 405:

> "Contracts made between persons in certain relative positions are treated in equity as subject to the general presumption of weakness on the one side and oppression or advantage taken of that weakness on the other, and the transaction cannot stand unless the person claiming the benefit of it is able to repel the presumption by contrary evidence, proving it to have been in point of fact fair, just and reasonable."

The rule has been often applied by this court in like cases.

> "Where there exists between two or more persons a relation of confidence and trust, by which one exerts an influence over the judgment of the other to such an extent as to subvert the latter's will and independence, a conveyance by the latter to the former will be set aside as fraudulent upon seasonable complaint. Hoeb v. Maschinot, 140 Ky. 330. It will be presumed that a deed was obtained by undue influence where the grantor was in feeble health, the grantee had acquired a dominating influence over

him, the deed was inconsistent with his oft expressed intentions, and gave the grantees a great advantage over others of equal kin to grantor." Hall v. Orme, 146 Ky. 467.

"The law is that transactions of this kind between near relatives or those occupying a confidential relation to each other will be closely scrutinized, and the burden is upon him who claims thereunder to show by the clearest evidence that the transaction was freely and voluntarily entered into and devoid of inequitable incidents." Sword v. Fields, 192 Ky. 629.

Ordinarily equity will only invoke the doctrine of confidential relationship where the parties sustain the relation either of trustee and *cestui que trust*, guardian and ward, attorney and client, parent and child, husband and wife, principal and agent, master and servant, and physician and patient, yet it will be imposed where none of those relationships exist if the facts justify the assumption that the transaction was had under such conditions that one of the parties may be said to have exercised dominion over the other." Hitchcock v. Tackett, 208 Ky. 803.

The testimony utterly fails to show any adequate consideration for this contract and it must be set aside.

The deeds which A. D. Ross took to himself for the Prewitt land and the R. M. Ross land were taken while he had charge of his grandfather's business as his trusted agent and were clearly taken in violation of his duty as such agent. The proof shows that for some years they did business in the name of Ross and Ross. Money was so deposited in the bank; checks were so drawn and obligations were given. While S. W. Ross alleges and also testifies that A. D. Ross was his agent and was to have a reasonable compensation for his services, the facts shown by the record lead to the conclusion that they were partners in the business which they carried on. These deeds should be held as conveyances to A. D. Ross as trustee for the partnership. The lands should be considered partnership assets. What each paid on the lands out of his individual means outside of the partnership funds should be ascertained. The partnership should be settled and on final hearing a judgment should be entered such as on the whole case may appear right upon the

settlement of the partnership. The hog transaction should be regarded as a part of the partnership transaction and settled with the other partnership matters. A. D. Ross's explanation of this transaction and what became of the money is not satisfactory, but further proof may make things clearer. On the return of the case to the circuit court it will be referred to a commissioner to take such proof as either party may offer and make a settlement of the partnership of Ross and Ross.

Judgment reversed and cause remanded for further proceedings consistent herewith.