## Gay v. Gay et al.

November 19, 1948.

J. R. Llewellyn for appellant.

C. P. Moore and Lewis & Weaver for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

At the same time and under the same circumstances that Theophilis G. Gay, commonly called Thee Gay, signed a will devising all of his estate to his nephew, Bud Gay and Tommie Gay, his wife, to the exclusion of his eleven-year-old daughter, he executed a deed conveying to them all of the land he owned, about 163 acres. The recited consideration is that the grantees would maintain him as long as he should live. The grantor was then about eighty-four years old. The deed was executed July 31, 1944, and the grantor died October 31, 1944. The grantee, Bud Gay, shot himself and died two days before the grantor. The deed was not put to record until November 20, 1944. The judgment denied cancellation of the deed in this suit by the grantor's daughter through her mother as guardian. The relief was sought upon the ground of fraud and undue influence.

The plaintiff's evidence in its essential particulars is the same as that in the will case as related in the opinion delivered today holding that the evidence required the submission to the jury of the issue of undue influence. Gay v. Gay, 308 Ky. 539, 215 S. W. 2d 92. However, the testimony of the child as to statements and transactions with her deceased father cannot be considered, the rule of admissibility under Section 606, Civil Code of Prac-

tice, being different in a suit to set aside a deed than it is in a will contest. Combs v. Roark, 206 Ky. 454, 267 S. W. 210. In this record there is greater elaboration in the widow's testimony as to her husband not having been able to attend to his personal business and as to his dependence upon his nephew, Bud Gay. She also gives an account of personal difficulties between Bud Gay and herself. There is additional descriptions of the old gentleman's physical weakness and of acts symptomatic of senility. Dr. Hughes, who treated him the last month of his life and who was introduced as a witness for the plaintiff, was rather evasive concerning his patient's mental condition. His testimony, however, leaves the impression that he regarded the old gentleman's state of mind as being somewhere between senile insanity and complete sanity.

The evidence in defense is, in substance, a categorical denial of all the adverse testimony and some affirmative proof that, while Thee Gay was in feeble health, his mind had remained unimpaired to any degree and that he was a man of reasonable discretion and judgment in attending to his affairs. The members of Bud Gay's family who had gone with him to Thee Gay's home on the Sunday morning, as related in the opinion in the will case, all denied any influence or coercion, any secret conversation, and any display of emotion on the old gentleman's part. One or more of them testified that he said that morning that he could not stay at home and that he knew that Tommie would take care of him. He went with them cheerfully and of his own free will and accord. Bud Gay had gone there at his request to get his hogs to take to market. It appears, however, that Bud acquired them and all the other personal property which his uncle had retained in the division with his wife. According to the evidence for the defense there had never been any influence, control, or domination of him by anyone concerning any matter, although it is admitted that the uncle had great confidence in his nephew. He had gone about the town of McKee and elsewhere freely after going to live with Bud and his wife. It is disclosed, however, that they had taken him to London and employed lawyers to file his divorce suit. It was filed ten days after the deed and will were made.

To be valid, a deed must be made freely and volun-

tarily by one having mental capacity to understand its consequences. Gillock v. Williams, 199 Ky. 169, 250 S. W. 836. And greater mental capacity is required to make a conveyance than to make a will unless it is a gift or is testamentary in character. Rounds v. Rounds, 220 Ky. 98, 294 S. W. 785; Schenk v. Schenk, 240 Ky. 237, 41 S. W. 2d 1102. Coupled with this, however, is the correlative rule that the weaker the mentality, the less proof of undue influence is needed to invalidate the instrument. Shaver v. Weddington, 247 Ky. 248, 56 S. W. 2d 980.

The mere fact that an aged and infirm person conveys his property to another in consideration of support raises no presumption that it was the result of undue influence. Dixon v. Dixon, 236 Ky. 608, 33 S. W. 2d 611; Tunks v. Vincent, 241 Ky. 379, 44 S. W. 2d 282. There is much more than that in this case. Here is a record in which it may be said that the testimony concerning the grantor's mental condition and the relationship of the parties is close to being balanced. Yet there is no evidence of any special kindness or affection or other attachment that might establish a legitimate persuasion or appeal to reason. So far as the recited consideration is concerned it was overbalanced in favor of the grantees. Nor is there anything shown in the record other than complete devotion to the grantor's child. The overt acts, the conditions, and the results manifest the operation of improper or undue influence upon a weak mentality. The analysis and comment of the evidence in the will case are appropriate here. Where such deeds are made under circumstances like the present—there being on one side physical and mental weakness and on the other side custody of the grantor, confidential relationship, and evidence of the exercise of an influence which hampered or destroyed free agency, resulting in an unconscionable advantage—the transaction cannot stand unless the person claiming the benefit of it repels the presumption by very clear evidence that it was freely and voluntarily entered into and consummated. This has been the consistent ruling of the court. Among many cases applying this law are: Hall v. Orme, 146 Ky. 467, 142 S. W. 1077; McDowell v. Edwards' Adm'r, 156 Ky. 475, 161 S. W. 534; Gross v. Courtley, 161 Ky. 152, 170 S. W. 600; Sword v. Fields, 192 Ky. 629, 234 S. W.

202; Ross v. Ross, 216 Ky. 577, 288 S. W. 305; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. 2d 854; Stege v. Stege's Trustee, 237 Ky. 197, 35 S. W. 2d 324; Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S. W. 2d 915; Martin v. Martin, 286 Ky. 408, 150 S. W. 2d 696.

Infirmity of intellect from senility is clear in this case. There is a corresponding or resulting weakness in capacity to comprehend and disregard any attempt which may have been to deceive or wrongfully influence this old man. The consequences of the deed are so unnatural and unconscionable that nothing but affirmative proof of fairness and innocence could negative the strong circumstantial evidence that there was undue influence brought to bear to obtain its execution.

This is not a case where we should apply the rule that where there is doubt as to the facts this court will resolve it by sustaining the chancellor's decision. We have had no difficulty in reaching the conclusion that the deed was not executed as the free and unrestrained act of a grantor in possession of his full mental facilities but that it was done through undue and improper influences. Accordingly, the judgment is reversed with directions to set aside the deed.