**BRACKEN v. JOHNSON et al.**

Court of Appeals of Kentucky.
March 21, 1952.

Rehearing Denied June 20, 1952.

150

Marshall Funk, Bowling Green, for appellant.

Milliken & Milliken, Bowling Green, for appellees.

STANLEY, Commissioner.

The judgment cancels a deed to a cottage in Bowling Green. It rests upon pleas of undue influence in procuring the deed and failure of consideration.

When Mrs. Lucy Shields and Henry Bracken were first married, on October 8, 1946, she was 93 or 94 years old, and he about 51. A year later she was awarded a divorce, which he contested, on the ground of cruel treatment. She lived for awhile with a nephew but returned to her own cottage to live alone. On December 14, 1948, when she was 95 or 96 years old and he 53 or 54, she executed a deed to all her property to Bracken for the recited consideration of his "looking after and taking care of and furnishing and providing a home" for her during the rest of her life and $100 "cash in hand paid." Two days later they remarried, and he moved into the cottage with her. About eighteen months later she filed suit for divorce on the ground of cruel and inhuman treatment and to cancel the deed and recover $240 which she alleged he had taken from her. Her petition, personally verified, charged that her husband had abused, cursed and beat her, and that the deed had been obtained by undue influence and duress. She died about one month later, September 5, 1950. The present suit to cancel the deed was then filed by the heirs.

The evidence of the plaintiffs is, in summary, that the grantor, nearing the

century mark in age, was very feeble in mind and body, requiring special food and treatment; that the defendant had mistreated and neglected the old lady to the point of cruelty. The neighbors had looked after her needs, including food and heat. One neighbor testified that on an occasion they were arguing about her paying for something, perhaps coal, and Bracken "ripped out a big oath and said he would get it and raised the mattress up and took the money and stuck it in his pocket." The old lady was crying and saying to the witness over and over, "Don't let him keep it." His response was "some kind of ugly word, some kind of a big curse word" which the witness did not recall because she herself was frightened. This was money she had received under the Old Age Security system and had saved.

The witness concluded her testimony by saying that Mrs. Bracken told her that he "was always aggravating her, telling her he wished she would go on and die so he could marry somebody else and bring her in there; just trying to worry the poor old soul to death." Another witness related that he had pushed her off the porch, or at least she had fallen and accused him in his presence of doing so. This he denied. There are several statements of the deceased as to her husband's threats, violence and mistreatment which were not competent as substantive proof of the occurrences. Head v. Head, 293 Ky. 371, 169 S.W.2d 25; Webber v. Western & Southern Life Ins. Co., 310 Ky. 280, 220 S.W.2d 584. But if he was not guilty of that conduct as he testified, and was to a certain extent supported, then these statements tended to prove hallucinations and manifest that weakness of mind that comes with senility for everyone who is fortunate enough (or unfortunate, according to one's view) to live to be nearly 100 years old.

The disqualification of the defendant as a witness in his own behalf concerning the transactions with the decedent both before and after marriage was waived, as well it might have been for according to our view, his testimony supports the plaintiffs' charges in respect to showing incapacity of the grantor to enter into the contract and fraud and imposition by which the deed was obtained.

The evidence for the defendant was that the old lady was lonely and her kinfolks did not look after her needs after their separation. For a period of twelve weeks, the defendant testified, she would stop him as he passed and beg him to come back to her. She sent others to him with the same entreaty. Two or three women somewhat corroborate this for which they expressed regret. At first she said nothing about her property but later she told him, "I will leave you this place if you will come back to me." He also testified that she said she would deed him the place if he would come back and said nothing about marrying or taking care of her, but, said he, that was understood. This question was asked and answered: "When you say it was understood, you mean that as her husband you would be expected to take care of her?" "Yes, sir." Bracken had the deed prepared by his lawyer, who took it to her home and had her execute it without any knowledge of anyone else. (It was not his present attorney, Mr. Funk.) Nothing had been said about paying any money, but the lawyer suggested that he put in the cash consideration and pay it to the grantor. Bracken testified he paid her in money but offered no sort of corroboration. This may be regarded as but an afterthought and no part of the consideration since it was not a part of the trade. No reference is made in the deed to marriage. The recitation of the consideration as being care and maintenance was Bracken's idea, as he testified.

After he yielded to her importunities and married the old lady, he testified he cared for and was kind to her. Among his acts of kindness he bought his 96 year old wife a washing machine, and an automobile so she could visit her first husband's grave. He never left the house without making arrangements for her meals. He had employed a series of nurses and cooks to provide for her during his absence. She was extremely jealous. He tolerated her false accusations and attempted to humor and make her comfortable. He is supported

in part by some neighbors, but their cross-examination revealed that his kind attention was not continual and that there was a great deal more than the usual courtesies of neighbors extended to her. It is insisted that the old lady had a persecution complex and a violent temper. Several of those employed for brief periods testified that she was mean and disagreeable and could not be satisfied. Of course, he knew her disposition when he made the contract for he had been her former husband.

Thus, the scene and the actors. Certainly the marriage was not one of those said to be made in Heaven. It was a travesty on the sacred relationship. It was but a scheme to obtain the old woman's property.

■ The appellant relies on the well-known rule that the courts will not cancel a deed unless its invalidity be established by clear and convincing evidence. Young v. Mitchell, 302 Ky. 551, 194 S.W.2d 965.

■ Concerning the fraud. Though the grantor or his representative has the burden of proof in a suit to cancel a deed, yet when circumstances which may be denominated as badges of fraud appear, such as extreme mental weakness and dependence of the grantor and strength and dominance of the grantee, the burden shifts to the grantee to prove that the transaction was fair, free from undue influence and devoid of vice which would render it inequitable and unfair. This rule is one of factual presumption resting on the common experiences and observations of life. Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S.W.2d 915; Gay v. Gay, 308 Ky. 545, 215 S.W.2d 96. That condition was clearly manifested in the instant case. Extreme old age with its infirmities and the natural imminence of death, when coupled with other slight circumstances showing an imposition or overreaching, present a situation which calls upon the beneficiary to clear up. Huffaker v. Brammer, 193 Ky. 267, 235 S.W. 727; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S.W.2d 854; Coffey v. Lair, 256 Ky. 741, 77 S.W.2d 4; Thompson v. Henson, 307 Ky. 61, 209 S.W.2d 849; Gay v. Gay, 308 Ky. 545, 215 S.W.2d 96.

■ Evil design and fraud fairly scream from the pages of this record. In writing of a fraudulent scheme in which a party had participated in having an 84 year old invalid woman execute her will in his favor, Judge Thomas said in Zinn's Adm'r v. Brown, 225 Ky. 814, 10 S.W.2d 300, 301, that she had "at least one foot and a half in the grave" at the time of this transaction. This 96 year old woman practically had two feet in the tomb. The marriage to this old woman, freighted with the infirmities of such age, was a mockery, and the claim of a capacity to make such a contract is a sham. She was a bruised reed in the wind. The defendant says that marriage was the consideration for the conveyance and that the insertion of an obligation to care for her was his own idea. Equity is especially jealous to guard the welfare of the weaker party and transactions with childish old people are closely scrutinized. If not reasonable and the purposes for which it is obtained are perverted or used as a cover, the instrument will be cancelled.

■ Concerning the failure of consideration. In Watson v. Gilliam, 252 Ky. 762, 68 S.W.2d 399, 401, a father had made a deed to his daughter and husband in consideration of care and support. We affirmed the judgment which cancelled the deed because the grantees had failed to comply with its terms. We said, "In such transactions the law requires a reasonably strict and substantial compliance with the contract." The character of treatment, maintenance and attention enters largely into the question of adequacy in fulfilling the condition which forms the consideration. We have various cases applying this rule, each decision being, of course, rested upon the facts peculiar to the case. Among those in which failure of consideration was found and held to authorize the cancellation of the deed are Wireman v. Wireman, 259 Ky. 120, 81 S.W.2d 908; Gabbard v. Watkins, 280 Ky. 257, 133 S.W.2d 54, and cases cited in those opinions.

■ When Bracken married the grantor he assumed the legal obligations and duties as her husband of caring for and

maintaining her. Thus, the law cancelled out the consideration if the recitation be accepted at face value. But putting that aside, even upon the evidence, conflicting in detail but quite consistent as an entirety, we think the evidence justified a cancellation upon the ground that he had not performed his contractual obligation fairly and reasonably.

The appellant also maintains that it cannot be said there was a failure of consideration or none at all because of his uncontradicted testimony that he had paid the grantor $100. As described above, that does not appear to have been part of the consideration.

The law is not blind to human nature. Though it cannot restrain men from avarice and greed or much of the evil to which they, unfortunately, are prone, yet it appertains to a court of equity to compel one who has wrongfully acquired property of another to disgorge it.

Therefore, the judgment is affirmed.