## Gibson v. Bennett et al.

Oct. 8, 1943.

Hiram H. Owens for appellant.

J. J. Tye for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

On May 9, 1939, Robert Gibson, joined by his wife Sarah, conveyed his home on Main Street in Barbourville, together with the household effects to Hazel Bennett (a great niece of Mrs. Gibson) and her husband, Howard, in consideration of the grantees agreeing to furnish grantors ''good, wholesome food, medicine, nursing, clothing, and such things as are reasonably necessary for

their support, care and comfort.'' Both Mr. and Mrs. Gibson were quite old, infirm and childish. On Feb. 17, 1941, she met a tragic death as a result of falling into a grate fire in her room. The surviving husband on Nov. 17, 1941, instituted this action to cancel the deed on the ground that the grantees had breached their contract in failing to furnish proper food and care to the grantors.

A large amount of proof was taken and upon final submission the chancellor held that plaintiff had failed to make out his case, and ordered the petition dismissed. The sole ground urged for reversing the judgment is that the chancellor's finding is against the weight of the evidence.

Mr. Gibson was 78 years of age at the time he testified and his wife was 76 when she died. Before executing the deed he had been operated on twice for cancer, had rheumatism to such an extent that he had not been able to work for 12 years, and had been confined to his room for 2 years. His wife's eyesight was bad and although feeble in body and mind she could get about and was described as a woman ''determined to have her way.''

The Bennetts immediately took possession of the Gibson property, which the evidence shows was worth from $1,500 to $2,500. It was badly out of repair and due to Mrs. Gibson's weakened condition and bad eyesight, it was filthy. The room which the elderly couple had occupied was infested with bed bugs and it was necessary to get rid of their bedstead, mattress, etc., and scrub the room with lye before it was fit for their occupancy. The record shows the Bennetts made extensive repairs on the house from foundation to roof in order to make it habitable. Without going into detail, it was painted inside and out, the roof and floors were repaired, water and gas were piped into the kitchen and electricity put in the house. The materials came to over $600 and when the cost of the labor was added the renovation of the home and premises ran in the neighborhood of $1,000.

The last of July, 1941, Mrs. Bennett left Mr. Gibson to be with her husband who was working in Louisville, and she moved Fred Miller and wife into the house to care for him. Mrs. Bennett testified, as did her father, Judge Williamson, that the old man agreed to this arrangement. Mr. Gibson admitted Mrs. Bennett had talked to him about it, but stated he never gave her an

answer, and does not remember of giving his consent to the arrangement. The Millers moved in and the arrangement worked so well that when the Bennetts returned in November, 1941, the Millers refused to vacate, resulting in a forcible detainer suit. About the time it was to be tried Mr. Gibson instituted this action to cancel the deed.

Mr. Gibson's testimony was to the effect that the Bennetts neglected him and his wife and did not give them the proper character of food suitable for infirm, old people; that their room, bed and persons were not kept in a sanitary condition; that his wife in a horribly burned condition was put in bed with him; that Mrs. Bennett was vicious in handling Mrs. Gibson and did not allow her in the kitchen or in other parts of the house, but required her to remain in her own room, and on occasions even struck her.

He was corroborated by the testimony of Mrs. Sylvia Miller, who with her husband Fred, attempted to remain in the property; by Mrs. Sally Smith, a near-neighbor who carried Mrs. Gibson food which she ate from the plate with her hands; by Mrs. Myrtle Golden, a niece of Mrs. Miller; by Mrs. Sarah Noe, but who never heard the old man complain until this suit was brought; by Mrs. Jenny Foley, who testified that the old lady was filthy when she died and that Mrs. Bennett threatened to keep the old man so weak that he could not get out of bed; by Mrs. Sarah Garland, who testified the old people were not properly fed and that Mrs. Bennett said she would not care how soon the old lady died. But Mrs. Garland contradicted Mrs. Foley by testifying that she (Mrs. Garland) washed the old lady the day before she died.

John Hammonds, a cousin of Mr. Gibson, testified he visited the old couple almost every Sunday and often found them alone; that he had never heard the Bennetts give them an unkind word, although a few months after Mr. and Mrs. Bennett moved in, the Gibsons complained that the Bennetts were not good to them; that the week Mrs. Gibson lived after she was burned she insisted on occupying the bed with her husband. He testified the old man had improved in health since the Millers took care of him and seemed to be happier than when living with the Bennetts.

In their testimony both Mr. and Mrs. Bennett denied the charges made by Mr. Gibson and his witnesses, and

stated they gave the old couple all the wholesome food they wanted and cared for them properly. That if they left Mr. and Mrs. Gibson alone, they had some one on the place to look after them. The old lady was constantly under foot. She had a mania for picking up coal and kindling with her hands and carrying it in her apron or dress and as a consequence her hands and person were usually dirty. She would go to the kitchen and leave the water and gas running, consequently the kitchen had to be locked against her.

The Bennetts are supported in their testimony by their parents, who appear to be people of standing, the father of Mrs. Bennett having served a term as judge of the county court. Herman Jackson, Charles Helton and Gus Dozier, all of whom worked for Bennett and were in his home, testified the old people received good food and were well cared for. To the same effect is the testimony of Jane Buttery Mullins and Dorothy Gambrel, who assisted Mrs. Bennett with her household duties at different times. R. L. Duncan, a carpenter and former city councilman, testified he was often in the Bennett home and Mrs. Gibson told him she was well fed and well treated. Dr. T. R. Davis was called to treat the Gibsons several times and they never complained to him of their food, care or treatment. Dr. Tye, who attended Mrs. Gibson when she was fatally burned, had died before he could testify.

Under this record we cannot say that the judgment of the chancellor is not supported by the evidence. There is much testimony in the record that Mr. Gibson never complained of the food and treatment of the Bennetts until this suit was instituted, and the evidence establishes the fact that he consented for Mrs. Bennett to join her husband in Louisville and leave the Millers in charge of him. It is indicated by the evidence that Fred Miller was the motivating power behind this litigation. It is likely that the chancellor concluded that Miller was the cause of the old man becoming dissatisfied and was the cause of this suit being instituted. However that may be, we cannot say the chancellor's finding is contrary to the weight of the evidence, therefore under our well-established rule we will not disturb the judgment.

Counsel for appellant asks us to reverse the judgment on authority of Wireman v. Wireman, 259 Ky. 120, 81 S. W. (2d) 908, and Gabbard v. Watkins, 280 Ky. 257,

258, 133 S. W. (2d) 54. But the facts in those cases are quite different from those in the one at bar. In the Wireman case it was not denied that the grantees' son manifested no interest in his father during the 8 months of the latter's illness; or that he jeered the old man and threatened to kick him. Naturally, we reversed the chancellor in that case and said the deed should be set aside.

In the Gabbard case the husband of the grantee admitted he struck his wife's mother, who had furnished $800 toward the purchase of their little farm. There, we affirmed the judgment of the chancellor to the effect that the old lady was mistreated by her daughter and the latter's husband and should recover her $800.

Cases of this character are what are known as fact cases and it is but seldom that the facts in one are similar enough to those appearing in another to control its decision. Each case must be considered alone and decided upon the proof adduced in it. Although the evidence is conflicting, but considering this record as a whole, we cannot say the chancellor's judgment is against the weight of the evidence.

The judgment is affirmed.