Margaret F. MORLAN'S EXECUTRIX
(Ellamae Fox) et al., Appellants,

v.

Wallace B. BATEMAN et al., Appellees.

Court of Appeals of Kentucky.

Oct. 25, 1957.

Rehearing Denied Feb. 14, 1958.

Blakey Helm, Frank E. Haddad, Jr., Louisville, for appellant.

Julian N. Elliott, Harris W. Coleman, Louisville, for appellee.

SIMS, Judge.

This is an appeal from a judgment upholding a conveyance by Mrs. Margaret F. Morlan to her nephew, Wallace Bateman, Sr., and his wife, Eva C. Bateman, of a house and lot in Louisville and a gift of $13,027.50 in securities Mrs. Morlan made to Mr. Bateman.

To save time and space we will hereinafter refer to the parties by their given names. The record shows these facts. Margaret and her sister, Mrs. Mary Bateman, were both widows, who had made their home together since 1910 in a house owned by Margaret on Everett Avenue in Louisville, worth about $10,000. Margaret was a successful dressmaker before she retired in 1930, and Mary ran the household. Wallace made his home with his aunt and mother until he married in 1915. Also Ellamae Funk, a niece of the old ladies, lived in their home from 1922 until she married Mr. Fox in 1943. Wallace after his marriage resided in Louisville in a nice apartment and raised a family, who were all grown and had homes of their own. He kept in close touch with his mother and aunt and often assisted and advised them. At times he had access to Margaret's lock box.

In August 1951, the old ladies considered entering a Presbyterian Church Home, as Margaret was then 80 and Mary 84 years of age. However, they decided against this

because they would have to give the Home all their property. They sent for Wallace and after talking over conditions with him, Margaret decided she would convey the Everett Avenue property to Wallace in consideration of him and his wife moving into the house and providing the sisters with "board, lodging, and ordinary and incidental services for their physical needs and comfort until each and both of them shall die." The deed was executed by Margaret on September 4, 1951, and was recorded the next day. Mary died June 17, 1952, and on that day Margaret gave and transferred to Wallace her securities worth $13,027.50. Wallace immediately took possession of the securities, sold them and deposited the proceeds to his credit in the bank.

On February 2, 1953, Wallace and his wife reconveyed the real estate to Margaret and in the same deed she conveyed the property back to Wallace making his wife also a grantee in consideration of $1. This deed was recorded February 27, 1953. The purpose of this last deed was to relieve the real estate of the lien for the support of Margaret. Simultaneously with the execution of this second deed, Wallace entered into a contract with Margaret containing practically the same obligations upon him as expressed in the first deed for her support.

After the death of Mary, Margaret continued to make her home with Wallace and his wife until the middle of June 1953, when her physical and mental condition became so bad that Dr. Morris Flexner recommended that Margaret be placed in the Crain Nursing Home, which is described as a "psychiatric nursing and mental hospital for senile arteriosclerosis, for elderly people." She remainded there until removed by a brother, Tom Funk, in November 1953 to the Baer Nursing Home. Margaret stayed in the Baer Home from November 9, 1953, to April 12, 1954, when her brother Tom, Ellamae and her husband forcibly removed the old lady to Ellamae's home where she lived until the fall of 1954. Margaret fell in Ellamae's home, breaking her hip and cutting her head, which necessitated her being taken to a hospital. Upon being released from the hospital, Margaret was put in the Nursing Home of Mrs. Higgason where she died on February 8, 1955. Wallace paid Margaret's expenses during all of this time, even while she was living with Ellamae. Furthermore, he regularly visited Margaret while in these various nursing homes.

It is worthy of mention that Mr. Tom Funk had lived in California for a number of years and returned to Kentucky on November 2, 1953, and his daughter, Ellamae, moved back to Kentucky in March 1954. On July 29, 1954, Margaret, while living in Ellamae's home, executed a will leaving practically all of her property to Ellamae. This will was probated soon after Margaret's death in 1955.

This is a large record of about 500 pages. The commissioner filed an exhaustive report of 24 pages in which he found Wallace carried out his contract with Margaret, expending over $12,000 in so doing, and he recommended the deed not be set aside. However, the commissioner found that Margaret did not make a gift of the securities to Wallace but only turned them over to him to be used if necessary to care for her and meet the expenses incidental to the last illness and burial of her sister Mary. The commissioner further found Wallace did not claim certain jewelry and silver belonging to Margaret and had turned same over to counsel for appellant.

Both sides filed exceptions to the commissioner's report. The trial judge in a well-reasoned opinion overruled appellant's exceptions and upheld the deed to appellees. He sustained appellees' exceptions and decreed Margaret made a gift of the securities to Wallace and that she was mentally capable of so doing at the time she transferred the securities to him. In passing, the trial judge in his opinion stated he could not say Margaret had mental capacity to execute a will on July 29, 1954. Judgment was entered dismissing the complaint.

Margaret filed this action on December 22, 1953, and her testimony was taken before she died February 8, 1955. After her death the action was revived in the name of Ellamae as executrix and individually. Margaret was about 83 at the time she testified and was in a state of advanced senile arteriosclerosis, and we agree with the commissioner and trial judge her testimony was so rambling and contradictory as to be of no value.

This record is voluminous and it would extend the opinion beyond reasonable length should we attempt to analyze the testimony. It will suffice to say it abundantly supports the trial judge's finding that Wallace carried out the terms of his contract with Margaret, as well as his finding that at the time she transferred the securities to Wallace on June 17, 1952, she was mentally competent to and did make a gift of same to Wallace.

To reverse the trial judge in a fact case such as this, we would have to hold his ruling clearly erroneous. CR 52.01. We cannot do this under the record. True, there is some testimony that Wallace and his wife did not properly care for Margaret and wrongfully put her in a nursing home. On the other hand, there is testimony by Mrs. Mae Hedges, who cared for Margaret in appellees' home, as well as a maid in the home, Anna Davis, that Margaret was well cared for and attended all the time she lived with appellees. Dr. Morris Flexner testified he recommended to appellees that Margaret be put in the Crain Nursing Home. The testimony of Mrs. Crain and of Mrs. Baer, both of whom operated nursing homes, fully corroborated Dr. Flexner that Margaret should be in a nursing home. Indeed, the fall she had while in the home of Ellamae conclusively shows the old lady could not be cared for safely in a private home.

A good bit was said in brief of appellants concerning $3,700 of her own money which Margaret used for household expenses while living with appellees. We agree with the trial judge that these were expenditures voluntarily paid by Margaret; and if she cared to make them, she was at liberty to do so and such expenditures do not show Wallace was remiss in his contractual obligation to support her.

As was said in the last paragraph in the opinion of Gibson v. Bennett, 295 Ky. 799, 175 S.W.2d 339, cases of this character are known as fact cases and each must be decided upon the proof adduced therein and it is but seldom the facts in one are similar enough to those appearing in another to control its decision. Hence we do not deem it necessary to discuss the authorities cited in briefs.

The judgment is affirmed.