## Starbird v. Blair.

(Decided December 4, 1928.)

LEE & SNYDER for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The facts in this case are so involved that it is difficult to get to the points which must be decided without making a statement as clearly as it is possible to make it under the circumstances. On June 16, 1920, H. Retta Wynn sold a large boundary of land in Harlan county to E. J. Ford. Ford executed to her his note for $4,790 as part payment. On August 3, 1920, Ford conveyed the property to the Powell Paxton Lumber Corporation, which assumed the payment of the Ford note to her. On July 26, 1921, the Powell Paxton Lumber Corporation conveyed the property to Jules L. Emerich. Each of the purchasers assumed to pay the Wynn note. When the Powell Paxton Lumber Corporation conveyed the property to Jules L. Emerich, five notes, for $7,310 each, were executed by him to G. L. White, and on February 23, 1922, a mortgage was executed by him to White to secure the payment of these notes. This mortgage was recorded in the Harlan circuit court clerk's office in April, 1922.

The notes were executed to White, instead of the Powell Paxton Lumber Corporation, to whom it is agreed the notes should have been executed, for reasons not necessary to discuss in this opinion. White transferred and assigned the notes to the Powell Paxton Lumber Corporation. On September 1, 1923, Jules L. Emerich conveyed the property to the Emerich Lumber Company, of Cleveland, Ohio, in consideration of $10 in cash and the further consideration that the company assume the payment of the Wynn note, and the further sum of $37,-210 payable to the Powell Paxton Lumber Corporation. On the 29th day of October, 1926, the Emerich Lumber Company executed a deed of conveyance for the same land to B. H. Starbird, in consideration of $1 and other valuable considerations. The last-mentioned deed was placed on record in the Harlan county court clerk's office on October 29, 1926. The deed from Jules L. Emerich to the Emerich Lumber Company was recorded in the Harlan county court clerk's office on September 10, 1923.

The Powell Paxton Lumber Corporation paid all the purchase money for the land, except the $4,790 Wynn note. The Powell Paxton Lumber Corporation was indebted to the People's State Bank & Trust Company of Perryville, Ky., in large sums. To secure the indebtedness to that bank it put up as collateral two of the $7,310 notes. The same company also borrowed money from

the guardian of Marion O. Hill, and also sold one of the notes for $7,310 to the guardian of that infant, and put up with the guardian as collateral to secure the note executed for borrowed money, and to also secure the payment of the note which was sold to the guardian, another one of the $7,310 notes. Later the People's State Bank & Trust Company of Perryville failed, and went into the hands of a deputy banking commissioner for liquidation. The Citizens' National Bank of Danville was then appointed guardian of Marion O. Hill, and it received two of the $7,310 notes, which had been turned over to the former guardian as above stated, and thereafter the remaining note of the five was put up with the Citizens' National Bank as additional security. At this stage of the proceedings H. Retta Wynn held a lien note for $4,-790 against the property, The People's State Bank & Trust Company in process of liquidation held two of the $7,310 notes, and the Citizens' National Bank of Danville, as the guardian of Marion O. Hill, held three of the $7,310 notes.

On September 11, 1924, H. Retta Wynn instituted suit in the Harlan circuit court to enforce her lien against the land which she had sold to E. J. Ford. It appears that during the transfers referred to additional lands had been acquired, and that the boundary, according to a later survey, contained something more than 2,300 acres. When Mrs. Wynn instituted her suit, she made E. J. Ford, the Powell Paxton Lumber Corporation, the receiver of the People's State Bank & Trust Company, the Citizens' National Bank of Danville, guardian for Marion O. Hill, Emma Emerich, Dr. Chelf, Administrator of the estate of William Chelf, and O. L. Ford defendants. The last three defendants appear to have had no interest in the property, except that O. L. Ford was a stockholder in the Emerich Lumber Company. E. J. Ford answered, stating that the Powell Paxton Lumber Corporation, to whom he sold the land, assumed the payment of the $4,790 note, which was executed by him. The receiver of the People's State Bank & Trust Company and the Citizens' National Bank of Danville, guardian, filed an answer, asserting their rights in the property by reason of the notes which they held, and praying that their liens be enforced. The two banks made their pleading a cross-petition against E. J. Ford, O. L. Ford, Emma Emerich, Jules L. Emerich, G. W. Faulkner,

and the Emerich Lumber Company, and caused a warning order to be made against them, and an attorney was appointed pursuant to said order.

E. J. Ford and O. L. Ford filed an answer to the cross-petition of the two banks, in which they attacked the execution of the five $7,310 notes, and the mortgage executed to secure their payment. Their pleading is long and involved, but it amounts to a plea of non est factum. The whole transaction was attacked by them as fraudulent, and it was denied that the notes or the mortgage were signed by Jules L. Emerich, or by any one authorized to sign them in his behalf, or that he signed or acknowledged the mortgage. Mrs. Wynn then amended her petition, and alleged that one Fred B. Davis had instituted some sort of proceeding in the Harlan circuit court against Jules L. Emerich, and had obtained a judgment against him, and was making some kind of claim against the land described in the petition, and he was called on to answer and set up any claim that he might have.

Davis answered, and made his answer a cross-petition against the receiver of the People's State Bank & Trust Company of Perryville and the Citizens' National Bank of Danville, as guardian. He alleged that the notes held by the banks were not executed or signed by Jules L. Emerich, or any one having authority to sign them, and that the mortgage was neither signed nor acknowledged by Jules L. Emerich. He adopts the pleading of E. J. and O. L. Ford, attacking the validity of the notes and mortgage, and goes further and alleges that they were forgeries. He then sets up his claim to the land in controversy, and the claim is that he is the owner of the land. He became the owner, so he alleges, through the institution of a suit by him on June 7, 1923, when he obtained a general order of attachment against the property of Jules L. Emerich, which was levied on the land described in the petition; that he prosecuted his suit to a judgment for $766, and that the judgment directed that his attachment lien be enforced and the land sold, which was accordingly done by a special commissioner, when he became the purchaser on January 5, 1925, for the amount of his debt, interest, and cost, and that a deed was executed to him by the special commissioner, with the approval of the court on March 23, 1925.

He alleged that on September 1, 1923, Jules L. Emerich, for the fraudulent purpose of cheating, hindering, and delaying his creditors, and to defeat the lien acquired by the levy of the general order of attachment, conveyed the land to the Emerich Lumber Company. He alleged that the deed which was executed to the Emerich Lumber Company was a cloud on his title, and he prayed that the deed be canceled and that his title to the property be quieted. He made the Emerich Lumber Company a party and secured service on it, by having the summons executed on the agent designated by it as its resident agent for the state of Kentucky.

The Emerich Lumber Company did not answer, and on May 21, 1926, Davis moved the court to take his cross-petition as true, and grant him a judgment against the Emerich Lumber Company, and his motion was sustained. The court entered a judgment to the effect that Davis was the owner of the land described in the deed which was executed to him by the special commissioner, which covers the same land as that described in the pleadings, and further the court adjudged that the deed executed by Jules L. Emerich to the Emerich Lumber Company on February 21, 1923, was fraudulent, and canceled it. The effect of this judgment was to hold that Davis was the owner of the property, and that the deed executed by Jules L. Emerich to the Emerich Lumber Company should be set aside, canceled, and held for naught.

Proof was taken on issues presented in the action between the Fords on one side and the two banks on the other. There seems to have been no dispute at any time about the validity of the Wynn note. The banks established the facts showing how the deal between the Powell Paxton Lumber Corporation and Jules L. Emerich was consummated. It is true the testimony keeps away from the part of Jules L. Emerich personally. The original trade appears to have been with Emma Emerich, wife of J. M. Emerich. The lumber company sold the land for $100,000, and in part payment it took city real estate in Cleveland, Ohio, and a farm in Ashtabula county, Ohio, and the remainder of the consideration was evidenced by the five notes mentioned. Real estate agents claimed a commission and instituted suit in Cleveland. According to the testimony, this was the reason why the deed was not executed to the real seller. The notes were

shown to be the property of the Powell Paxton Lumber Corporation, and that company transferred them to the banks as set out.

About this stage in the proceeding, the appellant, Starbird, appeared in the mixed and confused litigation and without delay he changed the whole face of the situation. He bought the Wynn note, and he also bought the five notes, two of which were held by the People's State Bank & Trust Company, and three of which were held by the Citizens' National Bank of Danville. These notes were all transferred to Starbird. The Fords withdrew their defense to the five notes. Mrs. Wynn terminated her litigation against the land, as did the Citizens' National Bank, guardian, and the People's State Bank & Trust Company. Starbird held all outstanding liens at this time, and was vested with title to the property by deed from the Emerich Lumber Company.

But F. B. Davis had a judgment, in which he was adjudged the owner of the land and his title quieted thereto. He had raised the question as to the validity of the five notes and mortgage executed to secure them. Whether he should have been allowed to attack the validity of the notes and mortgage is not material, and, in addition, he had been adjudged the owner of the land, and it may have been that it was proper to allow him to resist the claims against it. At all events, proof was taken which rather thoroughly shows that Jules L. Emerich did not execute the notes, and probably knew nothing of them, and that he neither signed nor acknowledged the mortgage. We leave out of consideration the question as to whether the certificate of acknowledgment to the mortgage could be attacked without a plea of mistake on the part of the officer, or fraud on the part of the party benefited. Section 3760, Ky. Stats., may, or may not, have application in this case, but it is not required that we dispose of the question at this time.

Before the litigation was entirely concluded in the lower court, Davis died, and thereafter J. H. Blair, who is the appellee, filed a pleading asking that he be made a party to the action, and alleging that Davis, prior to his death, had conveyed the property to him. Blair was the sheriff who delivered the attachment on the property, and he was also the special commissioner who sold the property and executed the deed to Davis therefor. Starbird filed a pleading, asking that he be made a

party, in which he alleged that he had purchased outstanding liens. There is one commendable thing about this suit, and that is that the further it progressed the less complicated it became, and when it was finally concluded it was a contest between Starbird on the one side and Blair on the other.

The lower court adjudged that Starbird was entitled to recover on the note for $4,790, with interest, which had been assigned to him by Mrs. Wynn, and he was adjudged a lien on the land to secure the payment of his judgment; but no personal judgment was awarded against Blair. As far as the claim of Starbird based on the five notes for $7,310 each and interest was concerned, the court denied him any judgment, and held that the mortgage and the notes were forgeries, and that they should be canceled.

The appellee is here standing on the judgment awarded in the circuit court, in which it was adjudged that by reason of the deed which he obtained from the special commissioner he was the owner of the land in controversy, and that his title thereto was quieted, and that the notes alleged to have been executed by Jules L. Emerich, and the mortgage to secure them, were forgeries, and therefore constituted no lien against his property. He makes no complaint about the judgment on the Wynn note. The judgment quieting the title to the land in Davis was not excepted to, and it has not been appealed from.

Counsel for appellant attack the judgment which was obtained by Davis against Jules L. Emerich, in which the land was sold as void. They say that there was in fact no judgment against Jules L. Emerich. Davis thought that Jules L. Emerich died after he instituted his action, and he appeared in the county court and caused an administrator to be appointed, or the public administrator to be designated, to wind up his estate. The administrator defended the action until it was finally concluded. It appears, however, that Jules L. Emerich did not die, as was thought, and that he was living throughout the litigation, and is living still. He was before the court at the time the administrator came in and took charge of his side of the litigation, and his attorney represented him to the end of the litigation.

Counsel for appellant also say that Jules L. Emerich had no personal property in this state, and that he did not reside in this state, and, even if he had been dead, the county court of Harlan county had no jurisdiction to appoint an administrator. They also say that Davis acquired no lien on the land by reason of his attachment, because the sheriff, in his return, gave no description of the property attached, and that it was wholly insufficient to identify the property levied on. They also say that the property was appraised for $23,000, and sold for $766; that there was a right of redemption, and that under the provisions of section 2364, Ky. Stats., no deed could be executed until the redemption right had expired; but the deed was executed to Davis immediately after the confirmation of the report of sale, and within less than three months after the sale was made. They also say that the sale was void, because the property was sold on a credit of three months, when under the provisions of section 696 of the Civil Code, the terms of the sale cannot be for a less period of time than six months. In response to all this counsel for appellee says that the grounds alleged against the validity of the original judgment might have been available as a defense to his cross-petition, when he sought to have his title quieted, but they are not available after the circuit court adjudged Davis the owner of the land by reason of the judgment now attacked and the deed executed pursuant to the proceedings in the former judgment.

There is nothing better settled in this jurisdiction than that, when a question has been judicially determined in a court of competent jurisdiction, it is conclusively settled so far as it relates to the parties to the suit, or any person in privity with them, and that after the question has been once settled it cannot be again litigated, as long as the judgment which settled the controversy remains in force unmodified. Continental Realty Co. v. Mowbray & Robinson Co., 187 Ky. 98, 218 S. W. 728; Perry v. Eagle Coal Co., 170 Ky. 824, 186 S. W. 875.

It appears, therefore, if the judgment entered in favor of Davis at the May term, 1926, was a final judgment, that it settled all questions as to the validity of the former judgment. That it was a final judgment is subject to little doubt. The Emerich Lumber Company, the holder of the record title adverse to the title of Davis, was made a party to the action on the cross-petition; and

was summoned as the law required. It made no defense of any kind, and a judgment was entered holding that Davis was the owner of the land, and that the deed to the Emerich Lumber Company was invalid, and it was canceled. There can be no question that the judgment operated to divest the Emerich Lumber Company of rights in such a manner as to put it out of the power of the court, after the expiration of the term, to place the parties in their original position. The judgment put an end to the action, so far as the question of ownership of the land was concerned, between the Emerich Lumber Company and Davis. It was a final judgment. Autry v. Autry, 191 Ky. 42, 229 S. W. 79; Adams et al. v. Bates, 191 Ky. 710, 231 S. W. 241; Harrison et al. v. Lebanon Waterworks, 91 Ky. 255, 15 S. W. 522, 12 Ky. Law Rep. 822, 34 Am. St. Rep. 180.

It.is further contended by counsel for appellant that the judgment quieting the title of Davis to the land was unauthorized, because the receiver for the People's State Bank & Trust Company filed an answer to the cross-petition, in which it denied the allegations of the cross-petition. It true that some of the allegations were denied, but not all of them. If the judgment was entered, however, without sufficient proof, or any proof, it was not rendered void thereby, but only erroneous, and there is no appeal from it. Assuming, therefore, without deciding, that the receiver for the bank could interpose a defense for the Emerich Lumber Company, which it did not attempt to. do, still the appellant is confronted with a judgment upholding the title of Davis without even an objection to that judgment, and without any appeal from it, and the right of appeal has now expired.

If the title to the land is in appellee, the question remains as to whether appellant is entitled to a lien to secure the payment of the five notes. Appellee argues that he is not, because the notes and mortgage were of no validity. A stipulation was entered into between the parties and made a part of the record. It is agreed that Starbird is the owner of the five notes by assignment from the banks. It is further agreed that Starbird owns all of the capital stock of the Powell Paxton Lumber Corporation. He purchased all the stock of that corporation at the time he bought the notes, because some of the stockholders of that corporation were making some claims in the litigation, and charging that the

corporation had fraudulently surrendered some of its rights. It is agreed in the stipulation that, when Davis purchased the land, he did so subject to all existing, valid, recorded liens. It follows that, if the notes purporting to be secured by a lien against the land were actually secured by such a record lien, the purchase of Davis was without prejudice to the rights of the lienholders.

Assuming that the mortgage and the deeds were executed without authority, and that Jules L. Emerich did not sign the notes, and did not sign or acknowledge the mortgage, still this would not mean that the purchase money due to the Powell Paxton Lumber Corporation was not a valid and existing debt. There was no fraud on the part of the lumber corporation, and it actually conveyed the property to Jules L. Emerich. Jules L. Emerich could not retain the title to the property without being held liable to the lumber corporation for the unpaid purchase money. As between the parties, the Powell Paxton Lumber Corporation would have a lien for the purchase money under the provisions of section 2358, Ky. Stats. When Jules J. Emerich executed the deed of conveyance to the Emerich Lumber Company on September 1, 1923, he provided in the deed that the note to Mrs. Wynn for $4,790 should be assumed by the Emerich Lumber Company, and he also provided that there were notes aggregating $37,210, payable to the Powell Paxton Lumber Corporation, which should be assumed by the Emerich Lumber Company. The deed shows, on its face, that these debts were a part of the consideration for the conveyance, and they therefore constitute a lien against the land for the security of their payment. This deed was placed on record in the Harlan circuit court clerk's office on September 25, 1923, and from that time on there was a recorded lien to secure the payment of the five notes, and this lien existed at the time that Davis purchased the land. The question, therefore, as to whether the original notes and the mortgage are valid, is one of no importance. Starbird having acquired these notes, he also acquired the lien upon the land to secure their payment, and this was a valid and recorded lien at the time Davis acquired his title to the property.

The lower court should have adjudged Starbird a lien against the property to secure the payment of the

sums set out in the deed from Jules L. Emerich to the Emerich Lumber Company. The cancellation of the deed to the Emerich Lumber Company could not deprive the Powell Paxton Lumber Corporation of the purchase money which was due it, secured by the lien as aforesaid.

Judgment reversed and cause remanded for proceedings consistent with this opinion.