## Gabbard et al. v. Watkins.

Oct. 31, 1939.

258

A. T. W. Manning and Edward R. Hays for appellants.

Luker & Begley for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellee, Elizabeth Watkins, a childish and enfeebled old woman, past seventy years of age, brought this suit in the Jackson circuit court, alleging in her petition that she had entered into an agreement with her daughter, Sunshine Gabbard, and her son-in-law, Sherman Gabbard, whereby, in consideration of her furnish-

ing them the sum of $800 to assist them in purchasing a small farm then offered them at a price of about $1,000, they agreed and promised to give appellee a home with them on the farm and "to support and maintain her and to furnish her with all things necessary and convenient in sickness and in health during the remainder of her life."

It is admitted that the appellee furnished her daughter $800 as agreed, which was used by her and her husband, together with the sum of $200 or more of their own money, for purchasing the small farm, onto which they moved and all lived together for a period of some six months, when, appellee alleges, she left the home because they became hostile to her and treated her in such a way and manner as made it impossible for her to live longer with them. Claiming that defendants had thus broken their agreement with her to provide her a home and support, she demanded of them a mortgage upon this farm they had jointly purchased, securing their repayment of the $800 she had advanced them on its purchase price for the consideration provided for in their agreement, which, due to their ill-treatment of her, compelling her to leave, had failed.

In seeming recognition of the justice and validity of her claim, appellants executed her the mortgage demanded, acknowledging their indebtedness to her by therein reciting that it was given to secure the payment to her of their indebtedness owing her in the sum of $800 and interest.

It is further alleged in the petition, and so testified by appellee, that upon the renewed invitation and urgings of the appellants, she was persuaded to return to their home and live with them under the terms of their earlier agreement to provide her a home and support, when, relying upon their performing it, she surrendered back to appellants the mortgage they had given her (which they at once destroyed) and consented to its being released of record.

After staying with them upon this second or return visit for something over a year, she claims appellants again, having destroyed the mortgage, began to so abuse and mistreat her as compelled her to again leave their home and, as she states, go "from pillar to post" to find one elsewhere.

Appellants having thus a second time failed to carry out their agreement, again she demanded a return of the $800 she had furnished them and which was practically all she possessed. Upon their refusal to return it to her, she instituted this suit against them, asking that she be adjudged recovery of this amount she had jointly invested with them in the home, as stated, credited by such an amount as represented the value of the services they had rendered her while living with them, and also a lien against this property (for the most part purchased with her money) and for its enforcement.

Defendants answered, denying the allegations of the petition and affirmatively pleading that no such contract was made with plaintiff as pleaded, nor was any agreement had with her whereby they offered or promised the old lady either a home or support, but that plaintiff had given her (the daughter) the $800 outright, rather than furnished her with it upon any conditions or terms; also they asserted that she had voluntarily left their home, rather than been driven therefrom by mistreatment and abuse, and that they were willing to have her return to their home, "if she would behave."

Plaintiff's reply denied the affirmative matter of the answer, making up the issue.

As is usual in unfortunate cases of this character, the evidence is in striking conflict.

Plaintiff testified, in support of the allegations of her petition, that the contract was made between them as stated and provided that, in consideration of her assisting them in buying the home they desired, by furnishing them the $800 on its purchase price of about $1,000, they would give her a home and support for life with them, after which the property was to go to her daughter and bodily heirs. She denied, further, that she had voluntarily left their home or was at fault for or caused their failure to keep their agreement, but testified positively that she was, by their mistreatment and abuse of her, compelled to leave; that when living with them, upon an occasion named, her daughter had held her while her husband, the other defendant, Sherman Gabbard, so hurtfully struck her in the face with his fist as to permanently injure her cheek bone, which injury was of so serious a nature as to call for surgical treatment.

The defendant, Sherman Gabbard, when interrogated as to this, answered, "Yes sir, I sure hit her." He also testified that he had struck her upon another occasion.

Other witnesses testified that the relation between the parties during Mrs. Watkins' stay with the Gabbards was bad.

The appellants testified that the mother was childish and quarrelsome, that she would get mad and call them names and that she was at fault for their not getting along.

Further her daughter, while testifying that the $800 was an unconditioned gift to her, by clear implication indicates that it was otherwise, by admitting that when her mother turned over to her this $800, for the purpose of assisting in buying the home, she told them she was going to thereafter live with them in the home thus jointly purchased.

Also Mrs. Wilson, a witness for the plaintiff, states that the daughter, when asked what was the understanding or transaction had between her and her mother in the purchase of this farm home, had replied that "they bought the place, and it was to be Mrs. Watkins' place, and she was to live with them, they were to live there all together, and they were * * * to keep her (Mrs. Watkins) and wait on her, and furnish her anything that she needed, for the place."

Other witnesses testified that though Mrs. Watkins was a feeble and childish old woman, she was not quarrelsome and had given them no trouble when she had lived with them.

However it may be as to this, to say the least, the defendants well knew the temperament of the mother and her then aged and childish condition and that, when she had furnished them the $800 to buy this home, with the understanding that they were all to live therein together, she had turned over practically all of her estate and would have to be furnished with a home and support. Having accepted practically all of her means, with full knowledge of the existing conditions, they certainly owed to her a more generous consideration of her frailties and childish tantrums, if such there were, rather than to make same their justification for striking or otherwise abusing her.

The chancellor, upon submission of the case, adjudged that plaintiff recover the $800 furnished her daughter and that it was furnished her in consideration of a contract had by the mother with the daughter, providing that she would therein give her a home and support for life. He also adjudged that plaintiff's leaving of the home was not her voluntary act, but one rendered necessary by the defendants' mistreatment of her and they therefore could not claim that plaintiff's act in leaving their home caused or prevented them from performing their agreement to furnish her with a home and support for life. Further, it was adjudged that plaintiff's furnishing the $800, for the purpose of their jointly procuring a home under the agreement then had, entitled her to be adjudged a lien upon the property so purchased, and that, the consideration for which the money was advanced having failed, the defendants should repay her the $800 they had accepted from her, subject to a credit of $150, allowed as the reasonable value of the services rendered her by them pursuant to the agreement, and directed a sale of the place and the application of a sufficiency of the sale proceeds to satisfy her judgment debt, interest and costs.

The defendants have appealed, assigning many grounds for reversal of the judgment, among which is one insisting that the defendants were entitled to a judgment upon the pleadings, in that the affirmative allegations of the answer, they insist, were not by any pleading traversed.

The record, however, itself shows this contention to be without merit, in that it discloses that plaintiff did file a reply to the answer, by which the answer's affirmative allegations were specifically denied.

Further they contend that plaintiff's petition failed to state a cause of action and that their demurrer thereto should have been sustained, upon the ground that the petition's allegation that the defendants became hostile to plaintiff and compelled her to leave their home by their way and manner of treating her was but a conclusion, rather than a pleading of fact.

However, in view of the testimony sustaining this allegation, which clearly shows that the defendants did become hostile to plaintiff while she lived with them, which caused their mistreatment and abuse of her, we

are inclined to regard this criticised allegation of the petition as not substantial and that she, as pleaded, was caused to leave appellants' home by their mistreatment of her, rather than that she voluntarily left, because of a whim or because only of their imagined mistreatment of her.

Further appellants contend that the court erred in adjudging a lien upon the property, in effect jointly purchased by them under the conditions named, for the reason that, it is argued, there was no intention of the parties to make the $800 furnished a loan debt against the property partly purchased therewith, but that the $800 was accepted by the daughter from her mother as an absolute gift, free from any conditions.

However, in view of the circumstances under which these transactions were had and carried out by the parties and which the chancellor found was amply shown thereby, we are led to approve the conclusions reached by him and his holding that the defendants held the property under conditions imposing a responsibility like that of a constructive trustee to use and employ the money furnished them to carry out their agreement had with plaintiff.

In the case of Luster v. Whitlock, 203 Ky. 405, 262 S. W. 572 (very analogous in its facts with those here presented), land was conveyed in consideration of support, which the grantee later could not furnish as agreed, when it was held that the contract should be canceled upon equitable terms, with a judgment for $200, secured by a lien on the land to be enforced if necessary.

Again, in the case of Wireman v. Wireman, 259 Ky. 120, 81 S. W. (2d) 908, where there was a suit for cancellation of a deed in which father conveyed land to his son, who agreed to take care of the father for life, the evidence disclosing the son's ill-treatment of his father was held to justify rescission of the deed for failure of consideration, in the absence of evidence that father had prevented son from performing his contract.

The principle and doctrine which obtains in the great majority of the states is that conveyances of property in consideration of agreements to furnish support are in a class peculiar to themselves, and that ordinarily, if the grantee in such a conveyance repudiates, or

substantially fails to perform, his agreement, a cancellation of the conveyance, and a rescission, may properly be decreed; also, that in cases of substantial breach, cancellation and rescission may be granted on equitable terms, notwithstanding part of the consideration for the deed was cash paid, and the remedy of adjudging equitable liens invoked where appropriate for effecting a rightful restitution and complete justice. Maddox v. Maddox, 135 Ky. 403, 122 S. W. 201; Elswick v. Elswick, 220 Ky. 723, 295 S. W. 1070; Watson v. Gilliam, 252 Ky. 762, 68 S. W. (2d) 399.

We do not think, in view of the equitable principles applied in these cases, that the chancellor erred in here awarding appellee a lien against the property conveyed her for the money she had advanced defendants for joint investment in the home, which was to be held by her daughter for use in carrying out their agreement.

While no statutory or contract lien was expressly provided for in their agreement, the circumstances are such as in themselves are to be held to create an equitable lien against the property so purchased.

This equitable principle and rule are thus stated in 10 R. C. L., Section 100, page 351:

"There are, however, certain liens, purely equitable in character as distinguished from statutory or common law liens, which are cognizable only in a court of equity. Such a lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. Thus, the right of a grantor of lands to have established a lien thereon for unpaid purchase money is neither a legal lien nor an interest in the real estate. It is a right merely recognized in courts of chancery in order to protect the very general equity that the purchaser shall not enjoy the property purchased with immunity from his agreement to pay therefor."

It is further said on the subject of liens in 17 R. C. L., Section 13, page 604, in part as follows:

"It is well settled that an agreement to charge, or to assign, or to give security upon, or to affect

property not yet in the ownership of the party making the contract, constitutes an equitable lien which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract.''

Also, in Section 14, Id., it is said that:

''Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.''

The learned chancellor, upon concluding from the evidence heard that the appellee made this advancement of $800 to the defendants, found the situation was the same as if appellants and appellee had jointly purchased the place, with the understanding that the appellants were to repurchase from her her interest or $800 share therein by providing her with a home and support for life; that having failed to perform their agreement to in such manner repay her the $800 so contributed towards the purchase price of the place, equity required that she be adjudged recovery of the amount so paid, less credit by the value of the services rendered her, and its repayment secured by a lien upon the property, to the end that the defendants should not continue to enjoy the property so purchased with immunity from their agreement to pay therefor.

We find no support in the record of defendants' claim that their demurrer to the petition should have been sustained or that the finding of the chancellor was unsupported by or against the preponderance of the evidence.

While we concur in the chancellor's finding that it was ample and sufficient to maintain plaintiff's claim, we are of the opinion that even were the proof less forceful and ample, we would nonetheless be inclined to sustain his ruling, in view of his being in a better position to judge the testimony of the witnesses than is this court and his judgment should be given weight on appeal, even where the court is in doubt as to the propriety of his finding.

Therefore, having carefully considered the case and

entertaining no doubt as to the propriety of the ruling made upon the whole record, we conclude that the judgment should be and it is affirmed.