Floyd ROBERTS et al., Appellants,

v.

Catherine JILES' EXECUTRIX (Mabel Copley), etc., Appellees.

Court of Appeals of Kentucky.

Nov. 15, 1957.

Creech & Cox, Ashland, for appellants.

Bunyan S. Wilson, Jr., Ashland, for appellees.

STEWART, Judge.

Catherine Jiles filed suit to cancel a deed made by her to Floyd Roberts and his wife, Kathleen Roberts. The complaint alleged mental incapacity on the part of the grantor, the exercise of undue influence on her, and the failure of the consideration. The answer admitted the conveyance, denied the affirmative allegations of the complaint, and counterclaimed for various items aggregating $3,775. Upon submission of the case to the jury, the property was restored to the estate of Catherine Jiles and the Roberts were awarded $500 on their counterclaim. During the pendency of this litigation Catherine Jiles died testate and Mabel Copley, the duly qualified executrix under her will, was substituted as the party plaintiff.

These grounds are urged for reversal: (1) The verdict rendered was flagrantly against the evidence; (2) the lower court erred in allowing the jury to try the case; (3) the circuit judge abused his discretion in failing to sustain a motion for a new trial based upon a claim of newly discovered evidence and fraud; and (4) Instruction No. 1 given by the trial court upon its own motion was too general and abstract. We shall answer each of these contentions in the order named.

Catherine Jiles, then age 77 and a widow living alone in Ashland, entered into an oral contract with the Roberts based upon the promise of the latter to move into the Jiles residence and do everything in their power to make her a good home during her lifetime and treat her with the same consideration and kindness as if she were one of the family. As her part of the bargain, Catherine Jiles on May 7, 1955, conveyed to them her home estimated to be worth between $8,000 and $9,000. The deed, prepared by a notary public, was an unqualified conveyance which mentioned as the only consideration: "One Dollar in hand paid and other good and valuable considerations."

At the time of the parol agreement and the conveyance of the property, Catherine Jiles was suffering from an advanced stage of arthritis. As a consequence, she was badly crippled in her hips and limbs and needed assistance in walking and aid in caring for her lower extremities.

These facts were developed by the proof introduced for Catherine Jiles. (For the sake of brevity we shall refer to this person as "Catherine" and to Kathleen Roberts as "Kathleen".) According to Catherine the whole attitude of the Roberts toward her changed after they had taken up their abode with her and she had given them the fire insurance policy on the house. She stated Kathleen would ignore her or "snap her head off" when she questioned her. Catherine said it was not clear whether she was allowed to watch television but she thought she was an unwelcome spectator. It was brought out that Kathleen refused to allow Catherine to sell a living room suite and, when the purchaser came for this furniture, Kathleen ordered him out of the house and threatened to get out a warrant for him if he transported it away. This episode was corroborated by the purchaser.

On one occasion Catherine claimed she was locked out of her home. Catherine testified the Roberts would not cooperate with her so that she could get to the bathroom when she needed to. She said Floyd Roberts once threatened to sell the house. Catherine's furniture was moved about without her being consulted, she stated, and, although she remonstrated, certain articles were left where they were moved. In spite of the Roberts' promise Catherine asserted she had to buy food for her personal use. Catherine complained that the neighbors were not allowed to call on her after the Roberts moved in. Catherine contended the treatment she received at the hands of the Roberts made a nervous wreck of her and she felt she was unable to endure living with them any longer.

The testimony of the Roberts was for the most part a denial of the charges made against them by Catherine. Furthermore, they offered explanations in respect to certain occurrences that Catherine took offense at which they thought the average person would pass off as inconsequential. Kathleen stated there was no intention on her part to lock Catherine out of the house at the time the latter said such had happened. Catherine had left to be away all day, Kathleen believed, and then she, Kathleen, had gone out on an errand for about an hour. As no one remained in the building Kathleen had locked it and Catherine had come home earlier than expected during Kathleen's absence. As to Catherine's remark that she had to buy most of her own food, the Roberts' testimony branded this statement as untrue. Kathleen declared she set a good table for Catherine at all times.

Other witnesses were introduced in behalf of the Roberts who testified they were "agreeable, easy-to-get-along-with persons". These witnesses were also of the view that the Roberts had never been derelict in their responsibility toward Catherine and that the only incidents of unpleasantness complained of by Catherine were of such a trivial nature that the ordinary person would pass them by unnoticed.

█ This is what is known as a fact case, and it is seldom that the proof developed in a case such as this is similar enough to that appearing in another of the same type to control its decision. Each case must therefore be considered alone and determined upon the evidence adduced in it. The general rule is that, where realty is conveyed in consideration of future care and support, reasonably strict and substantial compliance with the contract is required and the character of treatment, maintenance and attention given the grantor enters largely into the question of the adequacy of fulfilling the condition which forms the consideration. Bracken v. Johnson, Ky., 249 S.W.2d 149. See also Gabbard v. Watkins, 280 Ky. 257, 133 S.W.2d 54; Wireman v. Wireman, 259 Ky. 120, 81 S.W.2d 908; Watson v. Gilliam, 252 Ky. 762, 68 S.W.2d 399.

█ Unquestionably Catherine Jiles proved to the satisfaction of the jury that there had not been a reasonably strict and substantial performance of the agreement entered into between her and the Roberts. Although she was for all practical purposes the sole witness who appeared in her behalf, we conclude the evidence introduced in this instance was sufficient to uphold the verdict and the judgment entered thereon.

The next point to be disposed of relates to the submission of a certain question of fact to the jury. The record discloses this action was filed September 22, 1955, three months and ten days from the date of the delivery of the deed in dispute. On the succeeding October 19th motion was served by Catherine's counsel on the Roberts' counsel that the case be placed on the civil trial docket to be tried at the coming November trial term. This motion was sustained. After several continuances, a trial of the cause by jury was begun in March of 1956. After Catherine had introduced all her testimony in chief and rested, the Roberts'

counsel moved that the issues of mental incapacity and undue influence be stricken from the case because the evidence had not established either ground. This motion was sustained. Upon this ruling, the Roberts' counsel then moved that the remaining issue, that is, rescission of the deed for failure of consideration, be tried before the court and that the jury be dismissed. This motion was overruled, an exception being reserved, and the jury was allowed at the conclusion of all the evidence to pass on this issue with the result already noted.

It is the Roberts' argument that after the dismissal of the two grounds that are solely legal and therefore triable by jury there remained only the one ground that is purely equitable and accordingly triable before the court. It is true the reformation of a written instrument is equitable in its nature and as a consequence is a question to be determined ordinarily by the court without the intervention of a jury. See Johnson v. Holbrook, Ky., 302 S.W.2d 608, where this subject is discussed at some length.

However, it is our conclusion the Roberts' counsel made their motion too late to entitle them to a transfer of this case to the court docket. Where, as here, the issues are mixed, that is, legal and equitable, a party may demand a jury trial of any or all issues so triable as a matter of right. CR 38.03. A demand for a jury trial was made in this case to try and determine all the issues involved in this action in conformity with CR 38.02, and this demand was acquiesced in by counsel for the Roberts. After Catherine had introduced all her proof without objection on the legal issues as well as on the equitable one, it is manifest that the trial judge did not abuse his discretion when, having stricken all the legal issues from the cause, he refused in the middle of the trial to discharge the jury and try the remaining equitable issue as a chancellor. Elemental justice required that counsel for the Roberts should have seasonably moved to transfer the equitable issue from the jury calendar to the court docket before the commencement of the trial, and opportunity to do this was fully afforded them at the time Catherine's counsel served notice to place the action on the civil trial docket.

Nor was the trial judge required to make fact findings in this case, as contended by counsel for the Roberts. Under CR 52.01 findings of fact are necessary only when an action is tried upon the facts without a jury or without an advisory jury. We have neither of these conditions here. See Clay CR 52.01, Comment 2; Kelly v. Shamrock Oil & Gas Corp., 5 Cir., 171 F.2d 909.

It is also urged that the trial court should have granted the Roberts a new trial because it is claimed undue influence was exercised on Catherine by outside parties and because it is asserted she made false statements under oath that were material to the trial of this action. When testifying Catherine strongly denied that she had been pressured by any person to institute this action. More than that, there is no evidence of any character in the record which tends to indicate that any person induced her to maintain it. For these reasons we believe it would serve no good purpose to reopen this case in order to explore the contention of coercion any further.

The alleged false statements concern testimony Catherine made as to her financial status and in respect to certain powers she delegated to Mabel Copley. A careful reading of the evidence leads us to believe Catherine did not intentionally mislead the Roberts' counsel or the lower court by the answers she gave along the lines mentioned, because we feel she misunderstood the full import of the questions asked her. In the final analysis, however, we are unable to conceive how these matters are germane to the final issue which was determined by the jury. To approach this point from another angle, we do not believe this type of evidence was material. It is there-

fore our view the lower court did not abuse its discretion when relief from the judgment was refused.

The final complaint is that the lower court erred in instructing the jury that the law requires a reasonably strict and substantial compliance with the contract. We believe this instruction was proper. It is the general rule, applicable to such a case as the one under consideration, that reasonably strict and substantial compliance on the part of the grantee is required in his dealings with the grantor. This issue was developed by the pleadings and the evidence. It follows that it was proper for the jury to determine this question.

Wherefore, the judgment is affirmed.