B. F. M. BUILDING, INC., et al.,
Appellants,

v.

George A. TRICE et al., Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1971.

Charles H. Anderson, Louisville, for appellants.

Marvin M. Sotsky, Louisville, for appellee George A. Trice.

Henry D. Hopson, Louisville, for appellee Cook Lumber Co.

Hugo Taustine, Louisville, for appellee Rouck Plumbing Co.

Matt L. Garlove, Louisville, for appellee Prudential Heating and Air Conditioning Co.

Garner Petrie, Louisville, for appellee Hubert Griffin.

EDWARD P. HILL, Jr., Judge.

The bone of contention concerns the amount to which appellee George A. Trice is entitled for remodeling a two-story building at 1300 West Broadway, Louisville, Kentucky. Appellants, B.F.M. Building, Incorporated, and the former owners of the building (hereinafter owners), claim that a written contract dated July 28, 1964, signed by all interested parties controls the amount due appellee Trice (hereinafter contractor). The latter counters with the argument that the contract price stipulated in the written contract was fixed and inserted at the instance of the owners to enable them to borrow money to be used in the purchase and remodeling of the building, and that the actual agreement of the parties contemplated a cost-plus arrangement due to the uncertain nature of the remodeling job and the prospect that many changes would be necessary during the progress of the work.

The trial court accepted the contractor's theory of the contract and awarded judgment against the owners for $25,782.78, the amount claimed by him, which amount was considerably in excess of the contract price stipulated in the written contract. We affirm.

It is contended by the owners that the circuit court erred (1) in not upholding the written contract; and (2) by overruling their demand for a jury trial. They also say the evidence was insufficient to support the judgment and that they were entitled to a new trial.

We shall first address a question of procedure. This is an equitable action commenced by subcontractors and lienholders to collect their debts for labor and materials that went into the remodeling job. The owners filed a third-party complaint against the principal contractor, Trice, in which they relied on the contract. The contractor filed a "cross-complaint" against the owners in which he also relied on the written contract dated July 28, 1964, but did not seek a reformation of that part of the contract fixing the contract price. The owners say the judgment in favor of the contractor based on a cost-plus arrangement and ignoring the contract limitation as to amount was unauthorized for want of a pleading and prayer for reformation. This argument overlooks an "amended complaint" filed by the contractor on June 3, 1966, in which he stated the following:

"I. That the contract dated July 28, 1964, referred to by the Defendants, B.F.M. Building, Inc., Bryant, Frazier, and Morris, in their Third Party Complaint, was totally without consideration and was requested by Bryant, Frazier and Morris from George A. Trice to aid them with the financing of their proposed construction. That at said date, July 28, 1964, the Defendant and Cross Plaintiff, George A. Trice, had entered into no written contract for the purposed construction as the property owners had not decided what type of construction they desired. *That the only contract and understanding by and between the parties was to the effect that said Defendant and Cross Plaintiff would work with and assist the property owners in their*

*construction and be adequately compensated.* (Emphasis ours)

"II. Defendant and Cross Plaintiff, George A. Trice, further states that the property owners, Drs. Bryant, Frazier, and Morris, attempted to, and did in fact, deal with various sub-contractors pricing various materials, labor and construction, ordered themselves certain materials and changed plans on numerous occasions. That formal plans were never completed and partial plans were revised and changed on numerous occasions. That Defendant and Cross Plaintiff, George A. Trice, was assured he would be adequately compensated at the completion of said improvements."

There follows a renewal of the original prayer for "any and all further relief to which" the contractor "may be entitled."

As we construe the pleadings, the amendment constituted a revocation, or abandonment, or substitution of the allegations of the original answer and cross-complaint, entitling the contractor to rely on a verbal contract on a cost-plus basis. Murphy v. Torstrick, Ky., 309 S.W.2d 767 (1958). See also Vaughn v. Carlton, 309 Ky. 180, 217 S.W.2d 201 (1948).

■ The owners demand a reversal of the judgment on the ground they were improperly denied a jury trial.

As noted above, this action was originally properly filed in equity on April 19, 1966. An order was entered by the chancellor referring the case to the master commissioner for the purpose of hearing evidence on all questions in issue and for a report thereon. The owners made no objection to this order. It was not until June 9, 1966, that the owners demanded a jury trial in their answer to the cross-claim of the contractor. The question of a request for a jury trial was not brought to the attention of the trial court until after the hearing commissioner filed his report on January 10, 1969. True, the appellants made a verbal motion for a jury trial before the commissioner at the conclusion of the contractor's evidence, but the commissioner properly overruled this motion as being too late. Also appellants failed to present to the chancellor their motion for a jury trial made verbally before the commissioner. In fact, the question did not come before the chancellor until the hearing of exceptions to the report of the commissioner in 1969. We think appellants waived jury trial or more properly the right to an issue out of chancery.

The right to trial by jury has occupied a central place in our jurisprudence. The authors of our present Constitution saw to it early in the arrangement of sections of the Constitution that the ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate when they inserted Section 7 of that Constitution. The right was simply taken for granted and so deeply accepted that its constitutional expression had the mechanical quality of a ritualistic gesture in favor of a self-evident truth needing no justification. The historic guarantee of the right of jury trial has been carried over into Clay's Rules of Civil Procedure in Section 38.01.

This court has safeguarded to litigants the right of jury trial more zealously than has the weight of authority. We are told in 50 C.J.S. Juries § 23, that "ordinarily the parties to an action or proceeding *in equity* do not have the right to a jury trial." Twenty-two states are listed under footnote 15 of the above section. Kentucky is not one of them. It should be remembered that the instant suit was properly filed in equity. The general rule is similarly stated in 47 Am.Jur.2d, Jury, § 34, at page 652, in this fashion:

"It is a well-established principle that the court of equity once having jurisdiction of a suit will retain jurisdiction of it for all purposes and dispose of all the litigation in the case even though this involves a determination of legal issues and the granting of legal remedies. The constitutional right of jury trial does not pertain to such legal issues or remedies."

Contrary to the general rule, this court has always recognized the right of jury trial of traditional legal issues in equity actions (issues that were triable by jury at common law). In Roberts v. Jiles' Executrix, Ky., 307 S.W.2d 171, 174 (1957), it was said:

"Where, as here, the issues are mixed, that is, legal and equitable, a party may demand a jury trial of any or all issues so triable as a matter of right. C.R. 38.-03."

■ Notwithstanding the historic zeal of this court and the founding fathers to guarantee and preserve the right to jury trial, necessity demands some limitations of the right in some instances, among which may be listed: delay in demanding a jury trial (waiver); and presence of complicated or technical questions considered too detailed and involved for jury determination. The instant case, we think, comes under the exception we know as waiver. It may be appropriate here to observe that in this age of over-population, and "over" nearly everything else, with heavy dockets in practically all courts, there is a growing need to modernize the jury system. Some say this could be accomplished by limiting the number of jurors; others advocate not only limiting the number but providing specialist jurors for the particular case. But for the present, we only say if one demands a jury trial, he should demonstrate sufficient regard for the court to be diligent in his demand.

■ The owners next contend that "there is insufficient evidence of probative value to support the judgment." This court concludes that there is not only sufficient, competent evidence to support the judgment, but that the evidence on the question of the amount of the contract price preponderates in favor of the contractor's contention that the true agreement called for a cost-plus arrangement. It is proper that this court point out some of the evidence supporting its conclusion.

The contractor testified that Dr. Frazier, one of the appellants, obtained bids on the heating job and another bid on the paint job; that Dr. Bryant, also an appellant herein, undertook to get a bid on the electrical work but did not do so. The bids obtained by Dr. Frazier were higher than those obtained by the contractor. If the true agreement was a fixed contract price, it would seem that the owners would not worry themselves with getting lower bids on the various subcontracts. The contractor also testified that in October, while discussing various bids with the owners, he "agreed to work for them on a basis of 10%" and that the owners agreed to this.

The contractor also testified that the original plans were incomplete; that the plans did not contain details of certain cabinets specifically made and installed at the direction of the owners; that the winding, open, marble stairway was another situation identical to the cabinet job. There was no definite plan to cover furnaces and air conditioning, but both were installed by the contractor. Also a furnace was installed on the second floor. The contractor also testified that by the plans and oral discussion, the front of the building was to be "rebuilt" or remodeled, but that instead the front was torn down and rebuilt.

Mr. Platoff, a general contractor, testified that it is difficult to bid on this kind of job; that a cost-plus-10-percent commission is the usual contract.

Another contractor testified that at the request of Dr. Frazier, he submitted a bid of $58,836.96, which only encompassed the "roughing in" of the second floor, which is nearly twice the amount of the contract price argued by the owners ($33,500).

One of the superintendents of the contractor, a former building contractor and inspector for the U.S. Corps of Engineers, testified that the contractor instructed him to "do what the doctors wanted"; that he used "three different sets of drawings and many changes and sketches"; that at one of the meetings with the doc-

tors, it was agreed that "cost plus 10% contractor's fees would be paid"; that during the early progress of the work, it was understood that the upstairs was not to be finished but that "later on * * * Dr. Bryant" told him "to go on with the work upstairs"; that they were supposed to follow the plans as a general guide, but that "they were not restricted by them when the doctors wanted changes"; and that the plans "did not cover heating and electrical work."

The was other evidence tending to support the findings of fact and the judgment, but the above evidence should be sufficient to enjoin this court from finding that the judgment and findings on factual questions are clearly erroneous. CR 52.01.

Parole evidence is admissible to show the true transaction, agreement, or intention of the parties. 76 C.J.S. Reformation of Instruments § 83b at page 452. Ori v. Steele, Ky., 399 S.W.2d 727 (1966), is a case in point but reached the opposite result. However, it is strong authority for the proposition that where there is conflicting testimony, the findings of the commissioner and the judge will be upheld.

██ The owners' final argument is that the trial court's "irregular acts and misconduct prevented" them "from having a fair and impartial trial." We have carefully read the record referred to in the owners' brief on this argument and do not find any semblance of misconduct on the part of the trial commissioner. On the other hand, it would appear from the record that he was not only obviously fair and impartial during the hearing, but was thoroughly and obviously correct in his results as to facts and the law of the case. The master commissioner did not actively participate at the hearing nor in the report, but Deputy Master Commissioner John G. Hicks conducted the hearing and filed his long, exhaustive report and recommendations, containing over thirty pages, which were accepted and approved by the chancellor with only one, insignificant change.

The judgment is affirmed.

MILLIKEN, C. J., and NEIKIRK, OSBORNE, PALMORE and REED, JJ., concur.

STEINFELD, J., not sitting.