Estate of Andy **BOLEN**; Barbara Porter, Appellants,

v.

Jackie **BOLEN**, Appellee.

No. 2004–CA–000382–MR.

Court of Appeals of Kentucky.

July 22, 2005.

---

Martin L. Osborne Prestonsburg, KY, for appellant.

Adam P. Collins Hindman, KY, for appellee.

Before HENRY and VANMETER, Judges; MILLER, Senior Judge.[1]

## OPINION

VANMETER, Judge.

Appellants, Barbara Porter and the Estate of Andy Bolen,[2] bring this appeal from an August 8, 2003, judgment of the Knott Circuit Court. We reverse and remand.

In 1994, appellee Jackie Bolen (Jackie) conveyed a plot of land in Knott County, upon which four rental trailers were located, to his sister, Mabel Bolen (Mabel); her husband, Andy Bolen (Andy); and their daughter, Barbara Porter (Barbara). The conveyance was made "with rights of survivorship."

The transaction was evidenced by three documents prepared by a layperson and dated April 5, 1994. First there was a deed of conveyance, signed by Jackie only, stating a consideration of $25,000 for the land and trailers. Next there was a "CONSIDERATION STATEMENT," signed by all parties, also reflecting a val-

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

2. The Estate of Andy Bolen is named a party to this appeal. We note that an estate is not a legal entity, and no representative of the es-

tate was named in the notice of appeal. *See Turner v. Seale,* 298 Ky. 403, 182 S.W.2d 953 (1944). We consider this immaterial inasmuch as Barbara Porter succeeded to the sole ownership of the property in question under a survivorship deed. The Estate of Andy Bolen is not implicated in these proceedings.

ue of $25,000.00 for the land and trailers.[3] Finally, there was an installment "Sale Contract Agreement," signed by all parties, providing for the sale of the land and trailers for $55,000. The agreement specifically provided as follows:

To Whom This May Concern:

This sale contract agreement is between Jack Bolen, Hindman, Kentucky and Andy and Mabel Bolen—Barbara A. Porter 2330 St. Lucie Blvd., Fort Pierce, Florida.

This sale agreement is in the total amount of $55,000.00, payable including principal and interest at $500.00 per month or $6,000.00 per year. This contract begins on June 5, 1994 and ends on August 5, 2003.

The payments are to be made payable to Jack Bolen and if something should happen that he would decease then the remaining amount would be paid the same way to Phyllis Robinson until the balance is paid; as long as they are still living together at the time of his Jack Bolen's death. If Phyllis Robinson is not with Jack Bolen at that time, then this sale agreement is paid in full and no remaining balance would be due to any of his descendants.

If at any time the Bolen's or Ms. Porter decided to sale [sic] then Jack Bolen would have first opposition [sic] of refusal for purchase.

This sale agreement of contract is on the property located beside the Carrie, Kentucky Post Office, recorded in the Knott County Court House, Hindman, Kentucky in record book number 169 and page number 587 dated 5/5/94 [sic].

This contract is signed and agreed upon this 5 day of April 1994.

The deed and the consideration statement were recorded on April 5, 1994, although the sale contract agreement was not recorded until August 27, 1997. While the documents at first glance appear somewhat contradictory, it is apparent from the installment sale contract agreement that the principal amount was $25,000, while the interest payable over the nine year and two month period of the loan totaled $30,000, with the principal and interest payable in equal monthly installments of $500.[4]

Neither the deed nor the installment sale contract agreement expressly retained a lien upon the property, or contained any provision for default. In fact, neither document contained any reference to the consequences of failing to pay the monthly installments.

On May 1, 1995, Barbara filed a Chapter 7 bankruptcy petition and listed Jackie as a secured creditor.[5] The bankruptcy court treated the Knott County transaction as a secured transaction and proceeded accordingly. Upon reviewing Jackie's claim against Barbara's undivided one-third survivorship interest in the Kentucky property, the trustee apparently found that the asset was of no benefit to the bankrupt estate and entered an order of abandonment. This removed the Kentucky property from the impact of bankruptcy and permitted Jackie, in the event of default, to proceed against the property *in rem*.[6]

---

**3.** Presumably this separate document was intended to comply with KRS 382.135 (requiring a deed to contain a statement of the full consideration and the signatures of all parties).

**4.** As this matter is to be remanded to the Knott Circuit Court, it would seem a simple matter by means of an amortization schedule to calculate the principal retired by Andy and Mabel Bolen prior to the default.

**5.** 11 U.S.C.A. § 506 (West 2004).

**6.** *Cf. In re Keller*, 229 B.R. 900, 903 (Bankr. S.D.Ohio 1998)(upon abandonment of real property, creditor could take all proper *in rem*

The bankruptcy court ultimately discharged Barbara from all personal liability.[7]

Mabel died on April 5, 1999. Andy died on October 7, 2001, after commencement of this action. Barbara therefore was left as the sole owner of the land and trailers by operation of the survivorship deed.

As the payments had fallen into default, Jackie filed an action in the Knott Circuit Court on February 17, 2000, seeking a judgment for the balance due. After the action was amended to assert the equitable claim of reconveyance,[8] the circuit court acted within its equitable power and ordered a reconveyance. Barbara brings this appeal.

Barbara argues that the trial court lacked equitable jurisdiction to order reconveyance of the property. As support, she raises the doctrine of merger, Jackie's failure to retain a lien, and her discharge in bankruptcy from liability for the debt.

 More specifically, Barbara claims that the sale contract agreement merged into the deed of conveyance. While it is well established that prior negotiations will merge into a deed of conveyance,[9] here the trial court made the factual finding that the sale contract agreement was not executed prior to the deed of conveyance, and that the parties' mutual understanding was that the purchase price was to be paid over nine years and two months. The evidence in the record supports the trial court's finding. Monthly payments provided in the agreement did not commence until two months after the documents were executed and the deed and consideration statement were recorded. Further, the agreement, which refers to the book and page at which the deed was recorded, was not itself recorded until some years after the deed. Clearly, the documents should be interpreted together in determining the parties' intentions.[10] We therefore find no merit in Barbara's claim of merger.

 Next, it is true, of course, that because of her discharge in bankruptcy, Barbara can have no personal liability. However, the trial court clearly erred by concluding that Jackie "was not secured, as he did not file any lien or other security interest with the Knott County Court Clerk's Office." Long-standing Kentucky case law is that as between vendor and vendee, a vendor has a lien on granted premises for the unpaid purchase money even if no lien was expressly reserved in the deed.[11] So, as regards Barbara, who was a party to the deed and the sales contract, Jackie retained a lien on the property by operation of law for the unpaid purchase price.

Barbara argues that Jackie admitted at the hearing that he had no lien on the property. Jackie's testimony on this issue, however, was limited to the following ex-

---

actions relating to the property in state court, including prosecution of a foreclosure action).

7. 11 U.S.C.A. § 524(a)(West 2004).

8. CR 18.01.

9. *See Borden v. Litchford,* 619 S.W.2d 715 (Ky.App.1981).

10. *See Swinney v. Davidson,* 292 Ky. 110, 113, 166 S.W.2d 41, 42 (1942).

11. *See, e.g., Cawood v. Cawood's Adm'x,* 285 Ky. 201, 147 S.W.2d 88, 92 (1940); *Common-* *wealth Life Ins. Co. v. Eline,* 274 Ky. 539, 119 S.W.2d 637, 639 (1938); *Starbird v. Blair,* 227 Ky. 258, 12 S.W.2d 693, 696 (1928); *Brown v. Ferrell,* 83 Ky. 417, 419 (1885). While not necessary to our view of this case, authority exists that the filing of the sales contract showing unpaid consideration, prior to any conveyance by the vendee, serves as notice to third parties of the vendor's lien. *Bailey v. Southern Ry. Co.,* 112 Ky. 424, 429, 60 S.W. 631, 633 (1901).

change between Jackie and Barbara's counsel:

Q: All right. Did they—did Barbara or her father, Andy, or her mother, Mabel, sign a mortgage?

A: No, no mortgage.

Q: And in the deed that I showed you, Exhibit Number 2, is there any language in there saying "I retain a lien on this property?"

A: No, no lien on the property.

Q: All right. And I believe I would be correct to say there is not a lien on the title to those trailers either, is that correct?

A: No, they ain't no lien on it. I just ain't been paid for it. I worked hard for that.

As recognized by the trial court, this testimony goes to the issue of whether an express reservation of a lien exists of record in the Knott County Clerk's office, either on the face of the deed, on a mortgage, or on a certificate of title. However, the testimony cannot be characterized as constituting a judicial admission that the transaction resulted in no lien on the property. As previously noted, the vendor's lien in favor of Jackie with respect to the purchasers' interests in the property arose by operation of law, notwithstanding that the deed appeared absolute on its face and no mortgage was signed.

The trial court's second error was its decision to order reconveyance of the property to Jackie, free and clear of Barbara's equitable claim for the portion of the purchase price which her parents and/or she paid. Under *Sebastian v. Floyd*,[12] the seller's remedy upon default in payment of the purchase price is a foreclosure conducted under the auspices of KRS Chapter 426. Even if Barbara has no personal liability as regards the unpaid installments of the purchase price, the property is still subject to the vendor's lien. As stated by the Kentucky Supreme Court in *Sebastian:*

There is no practical distinction between the land sale contract and a purchase money mortgage, in which the seller conveys legal title to the buyer but retains a lien on the property to secure payment. The significant feature of each device is the seller's financing the buyer's purchase of the property, using the property as collateral for the loan.

Where the purchaser of property has given a mortgage and subsequently defaults on his payments, his entire interest in the property is not forfeited. The mortgagor has the right to redeem the property by paying the full debt plus interest and expenses incurred by the creditor due to default. In order to cut off the mortgagor's right to redeem, the mortgagee must request a court to sell the property at public auction. See Lewis, Reeves, How the Doctrine of Equitable Conversion Affects Land Sale Contract Forfeitures, 3 Real Estate Law Journal 249, 253 (1974). See also KRS 426.005, 426.525. From the proceeds of the sale, the mortgagee recovers the amount owed him on the mortgage, as well as the expenses of bringing suit; the mortgagor is entitled to the balance, if any.[13]

While this case technically involves neither a land sale contract nor a deed with a mortgage, no reason exists for treating the instruments herein any differently than those types of instruments in which a seller's remedy is a foreclosure under KRS

---

**12.** 585 S.W.2d 381 (Ky.1979).

**13.** 585 S.W.2d at 383.

Chapter 426.[14]

For the foregoing reasons, the judgment of the Knott Circuit Court is reversed, and this matter is remanded for proceedings consistent with this opinion.

HENRY, Judge, concurs.

MILLER, Senior Judge, dissents and files separate opinion.

MILLER, Senior Judge, dissenting:

It seems to me the question before us upon review of the chancellor's order of reconveyance is not what *may* be done but what *should* be done. When we review the act of a chancellor, we stand in his shoes, and review the record for ourselves, *de novo*. *Stephenson v. Burton,* 246 S.W.2d 999, 1000 (Ky.1951). It is true, however, that as to findings of fact we give deference under Kentucky Rules of Civil Procedure (CR) 52.01, and such will not be disturbed unless clearly erroneous. *Price v. Pike,* 458 S.W.2d 440, 442 (Ky.1970).

The record is clear that Jackie retained no lien on the property. As such, the chancellor's findings of fact on that issue are to be given deference. Jackie initially sought payment of the balance due; then sought the equitable relief of reconveyance. Without a lien and no adequate remedy at law, I am of the opinion that the chancellor acted correctly in ordering the equitable remedy of reconveyance. The chancellor was only remiss in not recognizing Barbara's equity in the property, if any she has. I would remand, therefore, only for consideration of her equity.

This is a family matter which can best be adjudicated by the wisdom of the chancellor in assigning the respective equities in the property. The sale and transfer of the property was a less than arm's-length transaction, with little or no negotiation as to the terms and conditions of the transfer. It was a family matter designed to extricate a sibling from an unhappy situation. Jackie required no down payment, and because of rental income from the trailers the transaction was essentially self-liquidating.

It is undisputed that Jackie's sister, Mabel, called him at three o'clock one morning asking "are you going to let me have these trailers so I won't have to die down here in this hole in Florida ... you know you ain't going to let me die down here in this hole." Touched by her emotional distress, Jackie returned her call within an hour and advised her that she could have the trailer-park for $55,000.00, "in order to get her out of Florida." Jackie asked Mabel how much she could pay, and he accepted her offer of $500.00 by the fifth of every month, which amount was paid by Mabel and her husband Andy for more than three years.

This is a sad and unfortunate end to the natural devotion of an uncle to his sister and her family. In a time of need he came to their aid, conveying his small trailer-park to them, thus providing them with a meager income and a home. Following the unfortunate circumstances of two deaths and a bankruptcy, Jackie was

14. *See* KRS 426.005(1) ("[i]n an action to enforce a mortgage or lien, judgment may be rendered for the sale of the property ..."). While the circuit court has broad powers in equity to fashion a remedy out of general considerations of right and justice as applied to the relation of the parties and the circumstances of their dealings, *see Gabbard v. Watkins,* 280 Ky. 257, 133 S.W.2d 54 (Ky.1939), a court should not resort to equitable remedies when adequate legal remedies are available. *See Wunderlich v. Scott,* 242 Ky. 481, 486, 46 S.W.2d 753, 755 (1932) (court stating that "so long as the law provides an adequate remedy, equity has no right to interfere. It must therefore appear that the legal remedy is inadequate before a court of equity will afford relief ...").

forced to seek the equitable relief of a reconveyance of the property. In defense, Jackie's niece Barbara (the sole survivor of the original transaction) claimed entitlement to the property with no obligation to complete payment by reason of her bankruptcy. Neither party sought the ill-afforded expense of a judicial sale of the trailer-park which would only result in a casting of the property outside the Bolen family.

There is little doubt in my mind that the parties entered into this vague and unartful transaction without aid of counsel in an effort to save money. Had they employed counsel, the transaction would doubtless have been handled in one of two ways. First, the purchasers would have executed a series of promissory notes. Jackie would have retained a purchase money lien in the deed of conveyance to secure payment of same. Or, a second method would have been for a sale on an "installment land sales contract" with Jackie retaining legal title pending payment of the installments. In either case, the purchaser would have acquired an equity in accordance with payments made.

Under such circumstances, the *legal remedy* for Barbara's default would have been a breach of contract action by Jackie and potentially the forced sale as concluded by the majority opinion that would result in both parties getting credit for their respective interests. The parties' actions in this transaction did not follow either of the above alternative legal routes. With no legal remedy such as that above, it is a classic case for equity to intervene.

In concluding that an adequate legal remedy exists, foreclosing an equitable remedy, the majority opinion leaves no option to Jackie and Barbara but a judicial sale of the property, something neither has sought.

It will serve no useful purpose to either of these parties to sell the property and divide the equities, where no lien existed and the parties did not seek enforcement of the default through judicial sale. The equities should be determined without sale. It seems to me sale should be avoided if at all possible.