William L. CLEMENTS and Charlotte R. Clements, Appellants,

v.

GREEN RIVER PRODUCTION CREDIT ASSOCIATION, Appellee.

No. 87–CA–428–S.

Court of Appeals of Kentucky.

May 13, 1988.

Discretionary Review Denied by Supreme Court Aug. 30, 1988.

---

John S. Hoffman, Henderson, for appellants.

P. Dane Shields, Henderson, for appellee.

Before HAYES, LESTER and McDONALD, JJ.

McDONALD, Judge:

This appeal presents the sole issue of whether the court erred in denying the appellants, William L. and Charlotte R. Clements, a jury trial on their third-party counterclaim against the appellee, Green River Production Credit Association (hereinafter PCA), pursuant to CR 39.01.

William and Charlotte are the parents of William Truitt Clements (hereinafter Truitt). Both William and Truitt were farmers. Truitt farmed 65 acres in Webster County and 162 acres in Union County. He purchased the Union County acreage from his uncle and aunt, Paul and Florence Clements, who commenced this action in 1984 after Truitt defaulted on the notes he signed for the farm. Truitt had obtained the down payment for this acreage from the PCA in 1977. In 1978, he borrowed additional sums to continue his farming operation. In January, 1979, he owed PCA $61,349 and $12,154, respectively, on the two notes and sought to borrow an additional $191,412 to keep his business afloat.

The PCA agreed to lend Truitt additional funds to finance his farming operation only if Truitt's parents would co-sign for him. The elder Clementses agreed to act as surety for Truitt and it is the three loans made in 1979 and 1980 [1] that became the subject matter of the PCA's cross-claim against Truitt and his wife, Doris, and its third-party complaint against William and Charlotte. William and Charlotte filed a third-party counterclaim against the PCA for fraud and misrepresentation. They allege they were misled by the PCA's agent, Phillip Tapp, who assured them that they were co-signing only for sums necessary for Truitt to put out his crops in 1979 and 1980 and not the entire sums advanced.[2] They alleged that the notes they signed were blank as to amount and that they had no idea about Truitt's existing debts due the PCA.[3]

Truitt's land and other assets were eventually sold to satisfy his various debts. He did not dispute the remaining amounts owed the PCA and, in fact, the parties were able to stipulate the sums owed the PCA under the various accounts. Truitt, however, also alleged that it was his understanding from Tapp that his parents would never be responsible to the PCA for more than his yearly crop expense for the years 1979 and 1980.

William and Charlotte demanded a jury trial on their counterclaim against the PCA. However, on March 27, 1985, the court entered an order, upon its own motion, referring the case to the master commissioner which provided "that because of the peculiar questions involved and the complexity of the issues raised herein, it is impractical for a jury to intelligently try this case." The appellants strenuously objected to their claim being resolved by the court and moved the court to vacate its order. When this motion was denied, the

---

1. Truitt borrowed $156,100 on 2–19–79, $185,000 on 3–10–80 and $18,550 on 8–5–80.

2. Much of the sums borrowed was spent to pay off pre-existing debts, living expenses and Truitt's note to Paul. For example, only $28,670 of the amount borrowed in 1979 was designated for "crop and operating expense."

3. William testified that he was not concerned about the fact that no sum was indicated on the note as, he explained, the actual crop expense couldn't be ascertained until the crops had been put out. As he had farmed for many years, he knew approximately what it would cost Truitt to put out his crops, and he testified it would not be anything close to the sums Truitt borrowed.

appellants renewed their motion to vacate, with no success. The matter thus proceeded before the commissioner who found "no evidence of fraud, deceit or misrepresentation on the part of the PCA" in respect to the three promissory notes. Exceptions to the commissioner's report were overruled and judgment was entered in favor of the PCA.

The appellants argue that the court erred in refusing them a trial by jury on their counterclaim. We agree that they were erroneously deprived of this fundamental right. CR 38.01 provides that the right of a jury trial "shall be preserved to the parties inviolate."

CR 39.01 as follows contains the "complicated issue" exception to CR 38.01:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury unless ... (c) the court upon motion or of its own initiative finds that because of the peculiar questions involved, or because the action involves complicated accounts, or a great detail of facts, it is impracticable for a jury intelligently to try the case.

Although the PCA argues the decision to refer the case to the master commissioner "was not based upon casual findings or a snap judgment," neither the order of reference nor the subsequent orders relevant to this issue contain any specific findings by the trial court of the necessity to remove the case from the jury. The order of reference merely parrots the rule and as such is wholly inadequate to deprive the litigants of the right guaranteed by our Seventh Amendment which provides thus:

Right of trial by jury.—The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution.

█ To utilize CR 39.01(c), the trial court must give "substantial reasons" for doing so. *Whitfield v. Cornelius,* Ky. App., 554 S.W.2d 870 (1977). Clearly, the trial court does not have broad discretion in this regard, but "limited" discretion. *Id.*

After all, "[T]he right to trial by jury has occupied a central place in our jurisprudence." *B.F.M. Building, Inc. v. Trice,* Ky., 464 S.W.2d 617, 619 (1971). "Where both legal and equitable issues are involved in a lawsuit, the legal issues should be tried by a jury if a proper demand is made." *Brandenburg v. Burns,* Ky., 451 S.W.2d 413, 414 (1970). *See also Johnson v. Holbrook,* Ky., 302 S.W.2d 608 (1957).

█ There is no question that the third-party counterclaim pled a cause properly triable by a jury. There is also no question that the appellants never waived the right to have their claim heard by a jury. Despite the PCA's arguments to the contrary, the issues and facts relevant to the third-party complaint and counterclaim are not complex or beyond the reasonable comprehension of a jury. There is not a "great detail of facts." The transcript of the proceedings before the commissioner is contained in only two volumes. There were no complicated accounting feats to be performed. Although there were three loans over a two-year period, as mentioned before, the parties were able to stipulate the amounts remaining to be paid. The case really boils down to issues of credibility. Juries are, we believe, more suitable to discern mendacity, and one should have been entrusted to hear this case.

The judgment of the Union Circuit Court is reversed and remanded for a trial by jury.

Further, pursuant to 2.(a) of the order designating the case as a special appeal, the application of CR 76.20, CR 76.32 and other appropriate rules of civil procedure for further appellate steps is reinstated effective the date of this opinion.

LESTER, J., concurs.

HAYES, J., dissents.

HAYES, Judge, dissenting:

The issue here is whether the trial court abused its discretion when, under the authority of CR 39.01, it denied the appellants' request for a jury trial under the facts of this case. There is some question

in my mind whether the Kentucky Supreme Court may by rule abrogate that which appears to be an absolute under the Kentucky Constitution—the right to a trial by jury. Assuming CR 39.01 to be appropriate under the Constitution, then I find no evidence produced by the appellants that the trial court has abused its discretion in finding the case to be too complicated for a jury. All the appellants argue, as they did at oral argument, is that where a party asks for a jury trial, one is automatically forthcoming. If this were the law, CR 39.01 would be a nullity. The appellants further stated they received a full and fair hearing before the master commissioner.

I would affirm the trial court under the peculiar facts of this case.